UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEPHEN ALLEN WHITTIER,

       Petitioner,

v.

SECRETARY, DEPT. OF CORR.,
ET. AL.,

       Respondents.

CASE NO.: 3:10-cv-166-J-34TEM

ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS

Respondents, Michael D. Crews,[1] Secretary of the Florida Department of Corrections, and Pamela Jo Bondi, Attorney General of the State of Florida (hereinafter referred to as Respondents or the State), by and through their undersigned counsel, and pursuant to Rule 5, Rules Governing Section 2254 Cases, responds to this Court's order to show cause and states:

This response is submitted pursuant to <u>McBride v. Sharpe</u>, 25 F.3d 962 (11th Cir. 1994). <u>The State of Florida does not concede or waive exhaustion as to any and all claims presented and asserts all procedural bars and defenses available to it</u>. 28

---

[1] The Honorable Michael D. Crews is substituted as the proper party respondent for Kenneth S. Tucker, pursuant to Federal Rule of Civil Procedure Rule 25(d).

U.S.C. § 2254(b)(3). The State has found no record of United States District Court Judge Marcia Morales Howard or United States Magistrate Judge Thomas E. Morris having been involved in any state court proceedings in this case.

## A. Motion to Dismiss

On October 21, 2010, Respondents filed a Motion to Dismiss Petitioner's amended § 2254 petition on the ground that it is untimely under the Anti-Terrorism and Effective Death Penalty Act (AEDPA) and, as there is no demonstration of entitlement to equitable tolling, it must be dismissed with prejudice. (Doc. 15). On August 13, 2012, this Court denied Respondents' motion to dismiss without prejudice and further directed Respondents to respond to the merits of Petitioner's claims. (Doc. 29).

Respondents maintain their position set out in their Motion to Dismiss that Petitioner's amended § 2254 petition is untimely under the AEDPA and must be dismissed with prejudice. (Doc. 15). In support of dismissal, Respondents further rely upon Jones v. Sec'y, Fla. Dept. of Corr., 2012 WL 6028995 (11th Cir. Dec. 5, 2012)(unpublished)(provided as "Ex. 48"), in which the Eleventh Circuit expressly recognized that "... Florida law requires that Rule 3.850 post-conviction motions be signed by the defendant and contain the defendant's oath[]" and, therefore, Jones' 3.850 motion was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). Id. at *1. The Eleventh Circuit then went on to

find no error in the district court's determination that Jones was not entitled equitable tolling, explaining:

> The untimeliness of Jones's § 2254 petition resulted from his counsel's simple negligence in failing to have Jones sign and properly verify the state post-conviction motions. *See Holland v. Florida*, 560 U.S. ----, ----, 130 S.Ct. 2549, 2564, 177 L.Ed.2d 130 (2010)("[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." (internal quotation marks and citation omitted)).

<u>Id</u>. at *5.

### B. <u>PROCEDURAL HISTORY</u>

Arrested July 17, 2002, (Ex. 30), Petitioner was charged by Information with committing on that date: Count 1 - robbery with a firearm; and Count 2 - possession of a short-barreled shotgun. (Ex. 1); §§ 775.087; 790.221(1); 812.13(2)(a), Fla.Stat. (2002). On August 16, 2002, the State gave notice that it had provided the defense with "Bank video tape" in discovery. (Ex. 31). On Petitioner's motion, by orders rendered August 28, 2002 and September 10, 2002, "Community Behavioral Services" was appointed to examine Petitioner to assist the defense in the preparation of its case. (Ex 32). By report dated September 11, 2002, Dr. Larry Neidigh, Ph.D., of Community Behavioral Services stated his opinion that based on his evaluation of Petitioner, he was not competent to proceed and that the issue of his sanity at the time of the offense should be deferred. (Ex. 33). By order of the circuit court rendered October 7, 2002, Petitioner

was adjudged incompetent to proceed and was committed to the custody of the Department of Children and Families (DCF) for treatment to attain competence. (Ex. 2). By letter dated March 27, 2003, and attached competency evaluation, DCF notified the circuit court that Petitioner was competent to proceed and no longer met the criteria for involuntary commitment. (Ex. 19: "Exhibit Q"). On April 17, 2003, Petitioner was discharged from involuntary commitment. (Ex. 34). On Petitioner's motion, by order rendered April 25, 2003, Dr. Ernest Miller, M.D., was appointed to examine Petitioner to assist the defense in the preparation of its case. (Ex. 35). By report dated July 28, 2003, Dr. Ernest Miller, M.D., stated his opinion that based on his evaluation of Petitioner, he was competent to proceed. (Ex. 19: "Exhibit O"). On Petitioner's motion, by order rendered August 27, 2003, Dr. Umesh Mhatre, M.D., was appointed to examine Petitioner to assist the defense in the preparation of its case. (Ex. 36). By report dated September 1, 2003, Dr. Umesh Mhatre, M.D., stated his opinion that based on his evaluation of Petitioner, he was competent to proceed and knew right from wrong at the time of the offense. (Ex. 19: "Exhibit P"). At proceedings held November 6, 2003, based on the report of Dr. Mhatre, the defense and the State stipulated to Petitioner's competency and the circuit court adjudged him competent to proceed. (Ex. 3). Written order adjudging Petitioner mentally

-4-

competent was rendered that day. (Ex. 4). On Petitioner's motion, by order rendered March 5, 2004, Dr. Harry Krop, was appointed to examine Petitioner to assist the defense in the preparation of its case. (Ex. 37). Petitioner's motion for continuance filed March 22, 2004, seeking further time for Dr. Krop to obtain Petitioner's records "in order for Dr. Krop to conduct a follow up evaluation regarding the issue of insanity at the time of the offense" was granted. (Ex. 38).

By amended Information filed March 25, 2004, in addition to previously charged Counts 1 and 2, Petitioner was charged in an additional Count 3 with possession of a firearm by a convicted felon. (Ex. 5); § 790.23, Fla.Stat. (2002). On May 5, 2004, Petitioner filed a motion to sever Count 3 from trial of Counts 1 and 2. (Ex. 6). At proceedings held June 1, 2004, and by order rendered that date, Petitioner's motion to sever was granted. (Ex. 6; 39). Also on June 1, 2004, the State filed its first motion *in limine* with memorandum of law seeking to prohibit Petitioner from presenting evidence of a mental health defense or of voluntary intoxication. (Ex. 40). The State's first motion *in limine* was heard at these June 1, 2004 proceedings and completed at proceedings held June 29, 2004. (Ex. 39; 40). The trial court granted the State's first motion *in limine* with order rendered June 29, 2004. (Ex. 39; 40).

Jury trial proceedings on Counts 1 and 2 of the amended

Information commenced on September 14, 2004 and concluded September 16, 2004. (Ex. 29; 29A). Petitioner was found guilty of robbery with a firearm as charged in Count 1 and guilty of possession of a short-barreled shotgun as charged in Count 2. (Ex. 7; 29). On September 28, 2004, Petitioner filed a motion for new trial, (Ex. 41), which was denied at commencement of sentencing proceedings on November 1, 2004. (Ex. 41; 42). Petitioner was sentenced on Count 1 to a term of 20-years' incarceration followed by 10-years' probation, with a 10-year mandatory minimum for use of a firearm, and on Count 2 to a concurrent term of 15-years' incarceration, and given 838-days credit time served on each count. (Ex. 8; 42).

Petitioner initiated an appeal therefrom, filing notice to the Florida First District Court of Appeal (First DCA). (Ex. 9); Fla.R.App.P. 9.110(b). Through counsel, Petitioner filed a motion to correct sentencing error in the trial court pursuant to Fla.R.Crim.P. 3.800(b)(2), (Ex. 43), which was summarily denied by order rendered April 19, 2005. (Ex. 29). Through counsel, Petitioner filed an initial brief in the appellate court, (Ex. 45), the state filed an answer brief, (Ex. 46), and Petitioner filed a reply brief. (Ex. 47). The Florida First DCA *per curiam* affirmed Petitioner's judgement and sentence on September 30, 2005 without opinion. (Ex. 10); Whittier v. State, 912 So.2d 1222 (Fla. 1st DCA 2005)(table).

-6-

Thereafter, Petitioner filed a post-conviction motion in the state circuit court pursuant to Fla.R.Crim.P. 3.850 through counsel on Thursday, December 14, 2006. (Ex. 11).[2] Also on December 14, 2006, Petitioner filed a motion for competency evaluation, (Ex. 12), and motion seeking ninety-days leave to amend the Rule 3.850 motion. (Ex. 13). On March 14, 2007, Petitioner filed a second motion seeking ninety-days leave to amend the Rule 3.850 motion. (Ex. 14). On June 12, 2007, Petitioner filed a third motion seeking leave to amend. (Ex. 15). Petitioner filed an amended Fla.R.Crim.P. 3.850 post-conviction motion on October 12, 2007. (Ex. 16). Thereafter, on July 16, 2008, Petitioner filed a motion to direct the State to file a response to the amended 3.850 motion. (Ex. 17).

On September 16, 2008, the circuit court denied Petitioner's motion for a competency evaluation, (Ex. 18), and by separate order summarily denied his amended 3.850 post-conviction motion without evidentiary hearing. (Ex. 19). Petitioner filed a motion for rehearing, (Ex. 20), which was summarily denied. (Ex. 21). Petitioner filed notice of appeal therefrom to the First DCA. (Ex. 22); Fla.R.App.P. 9.110(b). Through counsel, Petitioner filed an initial brief in the

---

[2] As Petitioner was represented by counsel throughout ALL 3.850 post-conviction proceedings in the state circuit and appellate courts, he is not entitled to the benefit of the mailbox rule with respect to any filing therein.

appellate court, (Ex. 23), and the State filed notice it would not file an answer brief. (Ex. 24); Fla.R.App.P. 9.141(b). On September 23, 2009, the First DCA issued an order for the State to show cause to which the State filed a response, (Ex. 25), and to which Petitioner filed a "reply brief". (Ex. 26). On December 15, 2009, the First DCA *per curiam* affirmed the circuit court's summary denial of Petitioner's rule 3.850 post-conviction motion without opinion. (Ex. 27); <u>Whittier v. State</u>, 26 So.3d 586 (Fla. 1st DCA 2009)(table). Petitioner's motion for rehearing was denied without comment, (Ex. 28); Mandate issued February 9, 2010. (Ex. 27).

On June 29, 2012, by mailbox rule Petitioner filed a *pro se* motion in the state circuit court pursuant to Fla.R.Crim.P. 3.850 claiming entitlement to relief pursuant to <u>Lafler v. Cooper</u>, --- U.S. ---, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). (Ex. 49). By order rendered September 17, 2012, the circuit court denied this Rule 3.850 motion as untimely and successive. (Ex. 50). Petitioner appealed therefrom to the Florida First DCA, (Ex. 51), filing a *pro se* initial brief in the appellate court by mailbox rule on October 17, 2012. (Ex. 52). The State filed notice to the appellate court that it would not file an answer brief. (Ex. 53). As of this filing (December 28, 2012), Petitioner's appeal thereof by the state circuit court is currently pending in the Florida First DCA in case number 1D12-

4895.[3] (Ex. 54).

## C. <u>MERITS</u>

Per the August 13, 2012 Order of this Court, Respondents respond below to the merits of those claims asserted by Petitioner in the amended § 2254 petition. (Ex. 29).

The AEDPA requires that "[a]n application for writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State". 28 U.S.C. § 2254(b)(1)(A). Here, <u>the State of Florida does not concede or waive exhaustion as to any and all claims presented and asserts all procedural bars and defenses available to it</u>. 28 U.S.C. § 2254(b)(3); <u>see</u> <u>Alexander v. Johnson</u>, 163 F.3d 906, 908 (5th Cir 1998); <u>Lambert v. Blackwell</u>, 134 F.3d 506, 515 (3d Cir. 1998); <u>Miller v. Dretke</u>, 431 F.3d 241, 245 (5th Cir. 2005); <u>Jones v. Jones</u>, 163 F.3d 285, 299 (5th Cir. 1998). While Respondents do not concede or waive exhaustion, 28 U.S.C. § 2254(b)(3), "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. §

---

[3] Petitioner has not noticed this Court of these pending proceedings or whether, upon its resolution in the Florida First DCA, he intends to seek leave to file a second amended § 2254 petition to raise this now pending claim as a basis for relief in federal habeas.

2254(b)(2). On the merits, Petitioner is entitled to no relief. 28 U.S.C. § 2254(d).

Under the AEDPA, "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgement of a State court [shall be entertained] only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In Carr v. Schofield, 364 F.3d 1246 (11th Cir. 2004), the Eleventh Circuit explains:

> Our review of a state court's judgment in a habeas corpus proceeding is governed by a "highly deferential standard of review for factual determinations made by a state court." *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002). The state court's determinations are "presumed to be correct" and the applicant bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* (*quoting* 28 U.S.C. § 2254(e)(1)). Further, we can grant federal habeas relief only where the state court's decision
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The state court's decision is "contrary to" if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). A state court's decision that applies the law as determined by the Supreme Court to the

> facts is not "contrary to" whether or not the federal court would have reached a different result. *Fugate*, 261 F.3d at 1216. The state court's decision is an objectively "unreasonable application" if it "identifies the correct governing [Supreme Court] legal principle ... but unreasonably applies that principle to the facts," *Williams*, 529 U.S. at 413, 120 S.Ct. at 1523, or "refuses to extend the governing legal principle to a context in which the principle should have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000).

Id. at 1250; see Williams v. Taylor, 529 U.S. 362, 409-413, 120 S.Ct. 1495, 1521-1523, 146 L.Ed.2d 389 (2000). Thus, the "contrary to" and "unreasonable application" clauses of section 2254(d)(1), have independent meaning and provide separate grounds for relief. See id. "Avoiding these pitfalls [described in *Williams v. Taylor*] does not require citation of our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in original). Under Section 2254(d)(1), however, it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; rather, only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003).

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the

exceptions in §§ 2254(d)(1) and (d)(2)." <u>Harrington v. Richter</u>, --- U.S. ---, 131 S.Ct. 770, 784-785, 178 L.Ed.2d 624 (2011). "[U]nless the state court clearly states that its decision was based solely on a state procedural rule, we will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the state court." <u>Childers v. Floyd</u>, 642 F.3d 953, 968-969 (11th Cir. 2011)(*en banc*), <u>citing</u> <u>Early</u>, 537 U.S. at 8, 123 S.Ct. at 364. In <u>Richter</u>, the Supreme Court further explained:

> ... As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)(discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)(Stevens, J., concurring in judgment). <u>As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

<u>Id</u>. 131 S.Ct. at 786-787 (underscore added).

Furthermore, as stated in <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), under section 2254(d)(2): "Factual determinations by state courts are presumed

correct absent clear and convincing evidence to the contrary, §
2254(e)(1), and a decision adjudicated on the merits in a state
court and based on a factual determination will not be
overturned on factual grounds unless objectively unreasonable in
light of the evidence presented in the state-court proceeding."
Id. 537 U.S. at 340, 123 S.Ct. at 1041; see Blankenship v. Hall,
542 F.3d 1253, 1271-1272 (11th Cir. 2008)("implicit findings of
fact are entitled to deference under § 2254(d) to the same
extent as explicit findings of fact.")(citations omitted).
"[W]here factual findings underlie the state court's legal
ruling, our already deferential review [under AEDPA] becomes
doubly so." Childers, 642 F.3d at 972.

For a decision of the state court to be considered an
adjudication on the merits so that it will be entitled to
deference for habeas review under the AEDPA, it is not required
to provide an explanation of its reasoning. Richter; Childers,
supra; Wright v. Sec'y Dept. of Corr., 278 F.3d 1245, 1254-1255
(11th Cir. 2002).

Each of the four claims on which Petitioner seeks relief in
federal habeas assert ineffective assistance of counsel as their
basis. (Ex. 6). In order for a defendant to show that he
received ineffective assistance of counsel, he must establish
that "counsel made errors so serious that counsel was not
functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment" and that counsel's deficient performance prejudiced the defense in that there is a reasonable probability that counsel's error rendered the result unfair or unreliable. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); see 28 U.S.C. § 2254(d). "There is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S.Ct. at 2069.

However, in federal habeas, a "double deferential judicial review ... applies to a *Strickland* claim evaluated under the s. 2254(d)(1) standard[.]" Knowles v. Mirzayance, 556 U.S. ---, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 1411 (2009), citing Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003). The Supreme Court explained in Knowles:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable --- a substantially higher threshold." *Schriro* [*v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)]. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. *See Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

Id., 129 S.Ct. at 1420. Thus, in light of the deference which must be afforded the decision of the state court on a claim of ineffective assistance of counsel, the proper inquiry in federal habeas is "not whether counsel's actions were reasonable[,]" but instead "whether there [was] any reasonable argument that counsel satisfied *Strickland*'s deferential standard." Richter, 131 S.Ct. at 788.

## **Ground 1**

In this first ground, Petitioner seeks relief in federal habeas based on a claim that his "[t]rial counsel was ineffective for failing to argue that Defendant Whittier's [metabolic] acidosis resulted in involuntary intoxication (not diminished capacity)" and in failing to request that the jury be instructed on involuntary intoxication. (Doc. 6)(parens. in original). Petitioner's Ground 1 in federal habeas is a verbatim reproduction of Ground 1 of the amended Florida Rule 3.850 post-conviction motion authored by collateral counsel and filed in the state circuit court on October 12, 2007. (Ex. 16).

At trial in the instant case, Petitioner's counsel *did* attempt to present the jury with evidence that he experienced a condition of metabolic acidosis through the testimony of Dr. Ernest Miller. (Ex. 29, p.150; 39, p.139-142). However, by pre-trial motion *in limine*, the State sought to have this evidence excluded from trial. (Ex. 40).

-15-

At the hearing on the State's motion *in limine*, Petitioner's counsel, relying upon the holding in <u>Wise v. State</u>, 580 So.2d 329 (Fla. 1st DCA 1991) and as approved in <u>Bunney v. State</u>, 603 So.2d 1270 (Fla. 1992), explained that her intent in calling Dr. Miller to testify at trial regarding Petitioner's metabolic acidosis was not to present a diminished capacity or an insanity defense, nor was it to argue voluntary intoxication. (Ex. 39, p.139-142). Rather, Petitioner's counsel contended that Dr. Miller's testimony was admissible because it was evidence of a physical infirmity which would explain his behavior at the time when he committed the robbery and his subsequent lack of memory thereof. (Ex. 39, p.139-142). The trial court, however, disagreed and granted the State's motion *in limine* upon finding, as follows:

> THE COURT: * * * The defendant seeks to use testimony from the evaluating psychiatrist that he suffered from metabolic acidosis nine days before the crime charged in this case. In the opinion of the evaluating psychiatrist, Dr. Ernest Miller, the defendant was not insane at the time of the crime. Dr. Miller reports based upon the history provided by the defendant that the defendant, quote, "had been drinking all along to some degree," close quote.
> The state and the defense agree that voluntary intoxication is not a defense in the case, and the defense has indicated that it doesn't seek to introduce the testimony with regard to metabolic acidosis on that issue. The defense seeks to introduce testimony about that issue to show that at the time of the crime the defendant suffered a physical defect.
> But the Court has been unable to locate any case in this country in which the fact that the defendant suffered from metabolic acidosis was admitted in any criminal trial. Indeed the phrase has seldom been used in

cases in any jurisdiction and only once in a Florida case, at least that this Court was able to locate, and that case was a civil case.

The defendant seems to be suggesting that if he suffered from metabolic acidosis at the time of the crime, then he would have been unable to form the specific intent to commit the crime.

The Court sees several problems with the admissibility of this testimony. Dr. Miller's report indicates that Shands Medical Center records show that nine days before the offense the defendant suffered from metabolic acidosis but that the hospital records from Florida State Hospital, which were created after the offense, show no such metabolic acidosis.

Clearly then metabolic acidosis can be corrected or can disappear. The Court has not been presented with any testimony regarding whether on the date of the crime the defendant suffered from metabolic acidosis.

Dr. Miller testified that metabolic acidosis may -- that was his word -- cause vague lassitude, nausea, and vomiting leading to irritability, auditory and visual hallucinations, headaches, and confusion.

Although Mr. Miller concludes somewhat ambiguously that this, quote, "unquestionably factored into his behavior," close quote, there has been testimony that the defendant was suffering those symptoms nine days -- excuse me, suffering those symptoms at Shands nine days before the crime or was suffering those symptoms during the crime.

Third, and significantly to the Court, **the metabolic acidosis due to self-neglect as reported by Dr. Miller appears to be related in whole or in significant part to the defendant's voluntary intoxication** [by alcohol]. **Many physical changes occur in the body with voluntary intoxication and particularly with prolonged voluntary intoxication** [by alcohol].

**Admission of testimony about the metabolic acidosis would therefore be a back door method of implicitly defending on an impermissible defense of voluntary intoxication. The evidence may not be introduced to show diminished capacity because the defendant is not contending that he was insane at the time of the crime.**

The Court also concludes that to the extent that the evidence may have any relevance, its probative value is substantially outweighed by the danger that the jury will be confused and will use the evidence in an impermissible manner. Consequently, the state's motion in limine is

-17-

granted.

(Ex. 39)(bold added).[4]

Later, during trial, after the State rested its case-in-chief, but prior to the commencement of the defense case, the previously excluded testimony of Dr. Miller was proffered by Petitioner. (Ex. 29, p.138-139, 246, 248-271). Following Dr. Miller's proffer, the trial court reaffirmed its prior ruling granting the State's motion *in limine*. (Ex. 29, p.272). Following his conviction and prior to imposition of sentence, Petitioner unsuccessfully raised the exclusion of Dr. Miller's proffered metabolic acidosis testimony by motion for new trial. (Ex. 41; 42).

Thereafter, as ISSUE II in his initial brief on direct appeal, Petitioner argued that the trial court erred in excluding Dr. Miller's proffered testimony where it was "offered to explain [his] loss of consciousness at the time of the robbery or to explain [his] inability to recall the events of the robbery." (Ex. 45). Petitioner also argued that Dr. Miller's proffered testimony of metabolic acidosis was admissible because

---

[4] By the time Petitioner robbed The Peoples First Community Bank with a short-barreled shotgun on July 17, 2002, voluntary intoxication had been abolished by the Florida legislature as a defense to any crime. (Ex. 5; 7); see § 775.051, Fla. Stat. (1999); Ch. 99-174, Laws of Fla. Further, evidence of diminished capacity was not then and has never been admissible under Florida law on the issue of criminal intent. See State v. Bias, 653 So.2d 380, 382 (Fla. 1995); Chestnut v. State, 538 So.2d 820 (Fla. 1989).

it was "relevant to the question of whether [he] was capable of forming the requisite criminal intent at the time of the offense due to lack of consciousness".[5] (Ex. 45). The Florida First DCA *per curiam* affirmed without opinion. (Ex. 48).

In state post-conviction and now in federal habeas, Petitioner contends that notwithstanding trial counsel's efforts to admit Dr. Miller's testimony of the metabolic acidosis he experienced nine days prior to the robbery into evidence at trial, counsel instead should have sought its admission under a different legal theory of *in*voluntary intoxication. (Doc. 6; Ex. 16). Still further, Petitioner contends that trial counsel should have shopped about until she found an expert who "was willing and able to testify at trial and who would have formed an opinion that there was a basis for the involuntary intoxication defense in Defendant Whittier's trial." (Doc. 6; Ex. 16). Indeed, in support of this latter assertion, Petitioner's collateral counsel commissioned one Dr. Darren Rothschild to evaluate Petitioner and who, five years after the robbery, opined that Petitioner's "starvation during the weeks preceding his arrest may have resulted in metabolic acidosis" which "could have had an intoxicating effect on him" and "would

---

[5] The State's position on direct appeal was that while the former argument of Petitioner was properly preserved, the latter was "made for the first time on appeal" and was "in express conflict with his theory of defense presented to the jury." (Ex. 46).

have been reasonable for involuntary intoxication to be considered a factor for his criminal behavior on July 17, 2002." (Doc. 6: "Attachment"; Ex. 16: "Attachment").

Thus, in state post-conviction and now in federal habeas, Petitioner contends that with trial counsel's failure to use involuntary intoxication as a defense and to "discover[] prior to trial an expert (either Dr. Rothschild or someone else)" who would be willing to testify in support of this different legal theory, "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." (Doc. 6; Ex. 16). Further, Petitioner contends that he "would have been relieved of all criminal responsibility" had counsel used this different defense of involuntary intoxication; therefore, he was prejudiced by counsel's deficiencies. (Doc. 6; Ex. 16).

In post-conviction, the circuit court, after identifying the appropriate <u>Strickland</u> standards of performance and prejudice applicable to claims of ineffective assistance of trial counsel, summarily denied Ground 1 in the alternative, as follows:

> In his first ground for relief, the Defendant raises two subclaims. In subclaim one he alleges trial counsel was ineffective because she did not raise involuntary intoxication as a defense. (Defendant's Amended Motion, at 5.) In subclaim two, he alleges trial counsel was ineffective because he did not request a jury instruction on involuntary intoxication. (Defendant's Amended Motion, at 7.)

In subclaim one, the Defendant alleges that trial counsel should have mounted an involuntary intoxication defense based on a condition called metabolic acidosis. The Defendant correctly notes that involuntary intoxication has been recognized as a defense to specific intent crimes in Florida in circumstances where a defendant unknowingly ingested a substance that impaired the defendant or where prescribed medication caused the defendant's criminal conduct. (Defendant's Amended Motion, at 5-6.) However, **in this case, the record reflects that the defense of involuntary intoxication by metabolic acidosis was not available to the Defendant because there was no evidence that the Defendant suffered from metabolic acidosis at the time of the crime.** (Exhibits "G," pages 16-17; "H," pages 261-271.) **Further, in granting the State's First Motion in Limine, the Court specifically concluded that evidence regarding metabolic acidosis was inadmissible at trial.** (Exhibit "G," page 18.) **Moreover, at trial, the Court reiterated that its ruling regarding metabolic acidosis remained the same.** (Exhibit "H," page 272.)

Initially, this Court notes that on direct appeal the Defendant claimed the Court erred in its ruling that evidence regarding metabolic acidosis was inadmissible at trial. (Exhibits "I,""J,""K.") Thus it appears that the Defendant is attempting to relitigate his previously denied claim in the guise of ineffective assistance of counsel. However, the Defendant, having raised this claim on direct appeal, is procedurally barred from raising it again in a motion for postconviction relief. Medina v. State, 573 So.2d 293 (Fla. 1990)(affirming the denial of postconviction relief and holding that issues that had been raised or should have been raised on direct appeal are barred in post-conviction proceedings). The Defendant may not use these postconviction proceedings to relitigate issues decided adversely to him on direct appeal. Thus, the Defendant's subclaim one is procedurally barred and constitutes an abuse of process. Foster v. State, 614 So.2d 455 (Fla. 1992); Ziegler v. State, 632 So.2d 48 (Fla. 1993); Ragan v. State, 643 So.2d 1175 (Fla. 3d DCA 1994). The previous denial of that claim constitutes the law of the case. Raley v. State, 675 So.2d 170 (Fla. 5th DCA 1996). Accordingly, the Defendant's subclaim one of his first ground is denied.

In subclaim two, the Defendant alleges that trial counsel was ineffective because she failed to request that an involuntary intoxication instruction be given to

the jury. **As discussed** *supra***, the Court ruled that evidence of metabolic acidosis was inadmissible at trial.** (Exhibits "G,""H.") **As the Defendant fails to show that there was any evidence to support a request by trial counsel for an involuntary intoxication instruction, the Defendant's subclaim two of his first ground for relief is denied.** Accordingly, the Defendant's first ground is denied.

(Ex. 19)(bold added).

As is apparent from the above, notwithstanding its initial finding that Petitioner's motion did not comply with the oath requirement of Rule 3.850, although the circuit court considered the first of Petitioner's sub-claims to be procedurally barred, it only did so only *after* finding that "the defense of involuntary intoxication by metabolic acidosis was not available to the Defendant because there was no evidence that the Defendant suffered from metabolic acidosis at the time of the crime[,]" and "in granting the State's First Motion in Limine, the Court specifically concluded that evidence regarding metabolic acidosis was inadmissible at trial." (Ex. 19). Hence, with the circuit court's reliance upon these specific findings to conclude that trial counsel was not ineffective on the merits as to sub-claim two, the direct implication of it having made these specific findings is that it also found that trial counsel was not ineffective as to sub-claim one as well. (Ex. 19).

Petitioner appealed the above decision of the circuit court to the Florida First DCA, presenting its denial on the merits as an issue for appellate review. (Ex. 23, p.8-15). The First DCA

affirmed *per curiam* without opinion. (Ex. 27).

As discussed above and reference to the state court record confirms, the circuit court's factual determination that there is "no evidence that the Defendant suffered from metabolic acidosis at the time of the crime" is supported and entitled to deference under the AEDPA. (Ex. 19: "Exhibits G and H"; 29; 39); see Miller-El; Childers, *supra*; 28 U.S.C. § 2254(e). Likewise, so too is the circuit court's factual determination that Petitioner "fail[ed] to show any evidence to support a request by trial counsel for an involuntary intoxication instruction" supported and entitled to deference under the AEDPA. (Ex. 19: "Exhibits G and H"; 29; 39); see Miller-El; Childers, *supra*; 28 U.S.C. § 2254(e). In so finding, acting in its capacity as finder of fact, the state circuit court was free to discount and even disregard collateral counsel's attempt to construct support for this theory by hiring a doctor -- "(either Dr. Rothschild or someone else)" -- he contends trial counsel would have discovered had she tried. See Fla.R.Crim.P. 3.850(d). Indeed, "the mere fact [that] a defendant can find, years after the fact, a mental health expert who will testify favorably for him does not demonstrate that trial counsel was ineffective for failing to produce that expert at trial." Reed v. Sec'y, Fla. Dep't of Corr., 593 F.3d 1217, 1242 (11th Cir. 2010), quoting Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir. 1997).

In addition to no evidence that Petitioner suffered metabolic acidosis at the time of the crime, the circuit court further found that such evidence was inadmissible as a matter of state law. (Ex. 19). Indeed, under Florida law, whether couched in terms of being voluntary or involuntary, *absent the presence of an intoxicant*, *there can be no intoxication*. <u>Pietri v. State</u>, 885 So.2d 245, 252-255 (Fla. 2004)("Pietri essentially asserts that evidence could have been presented, not to show that he was legally insane or voluntarily intoxicated, but instead that his prior drug abuse resulted in a mental defect - 'metabolic intoxication' - a diminished capacity which produced an inability to form the specific intent to commit premeditated murder. Such evidence was inadmissible."); <u>see</u> <u>Pietri v. Fla. Dept. of Corr.</u>, 641 F.3d 1276, 1284 (11th Cir. 2011), <u>citing</u> <u>id</u>. Even the medical expert commissioned by Petitioner's collateral counsel agreed that Petitioner was not under the influence of an intoxicant at the time he committed the crimes. (Ex. 16: "Attachment").

The Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law ...." <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Accordingly, "a state court's interpretation of state law ... binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S.Ct. 602, 604, 163 L.Ed.2d 407 (2005)(citations omitted). Thus, regardless of whether

-24-

Petitioner's trial counsel had attempted to seek admission of this very same evidence at trial by couching it in terms of having induced *in*voluntary intoxication, the result would have been the same. <u>Pietri v. State</u>, *supra*; <u>see</u> <u>Herring v. Sec., Dep't of Corr.</u>, 397 F.3d 1338, 1354-1355 (11th Cir. 2005)("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done [*e.g.* proposed objection would have been overruled] .... It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"), <u>quoting</u> <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997); <u>Callahan v. Campbell</u>, 427 F.3d 897, 932 (11th Cir. 2005)("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [defense counsel] objected to the introduction of [the petitioner's] statements based on [state law] – the objection would have been overruled. Therefore, [defense counsel] was not ineffective for failing to make that objection.")(citations omitted).

Overall, even if Petitioner was experiancing metabolic acidosis at the time he robbed The Peoples First Community Bank with a short-barreled shotgun on July 17, 2002, with no evidence that he was under the influence of any intoxicant at that time, such evidence was inadmissible under Florida law. Accordingly,

Petitioner's trial counsel cannot have been ineffective in failing to seek admission of Petitioner's metabolic acidosis under an involuntary intoxication theory, nor can Petitioner establish prejudice, as such evidence would not have been admissible. See Strickland, *supra*.

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Richter, 131 S.Ct. at 784. Further, the Supreme Court has made it clear that under Section 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; rather, only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief under the AEDPA. Wiggins, 539 U.S. at 520-521, 123 S.Ct. at 2535. As set out above, Petitioner cannot "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, *supra*. Accordingly, for those reasons set out above, as well as in the post-conviction court's order denying 3.850 relief and affirmed by the Florida First DCA, Petitioner cannot establish that the Florida courts' denial of post-conviction relief was contrary to or an unreasonable application of Strickland, or that it rest upon an unreasonable determination of the facts in light

-26-

of the evidence presented. See Wiggins; Miller-El; Williams; Strickland, *supra*; 28 U.S.C. § 2254(d).

Accordingly, Ground 1 of the amended petition for writ of habeas corpus must be denied. 28 U.S.C. § 2254(d).

### Ground 2

In this second ground, Petitioner seeks relief in federal habeas based on a claim that his trial counsel "rendered ineffective assistance by failing to introduce the bank video which would have established that Defendant Whittier was not armed during the alleged offense." (Doc. 6). Petitioner's Ground 2 in federal habeas is a verbatim reproduction of Ground 2 of the amended Florida Rule 3.850 post-conviction motion authored by collateral counsel and filed in the state circuit court on October 12, 2007. (Ex. 16).

The circuit court, after identifying the appropriate Strickland standards of performance and prejudice applicable to claims of ineffective assistance of trial counsel, as well as ruling as a matter of state law that Petitioner's motion was insufficient for lack of oath, alternatively denied Ground 2, as follows:

> In his second ground for relief, the Defendant claims trial counsel was ineffective because she did not introduce the bank's surveillance video to establish that the Defendant was unarmed during the robbery. At trial, photographs duplicated from the bank surveillance video were properly admitted into evidence as fair and accurate depictions of the video images. (Exhibit "L," pages 63-71.) The Defendant admits "[t]hat the photographs

introduced by the State did not depict that Defendant Whittier carried a firearm, but they were unclear and therefore left open the possibility for the State to argue that Defendant Whittier did carry a firearm." (Defendant's Amended Motion, at 8-9.) Thus, it appears that the Defendant's underlying complaint concerns the clarity of the images, not the effectiveness of trial counsel.

Initially, this Court notes that to the extent Defendant appears to be attempting to challenge the sufficiency of the evidence against him, the Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking post conviction relief. Betts v. State, 792 So.2d 589 (Fla. 1st DCA 2001); Jackson v. State, 640 So.2d 1173 (Fla. 2d DCA 1994). Moreover, the Defendant, once more attempts to disguise a claim raised and denied on direct appeal in the guise of ineffectiveness of counsel. Specifically, the Defendant claimed on direct appeal that the Court erred because it admitted the photographs and did not require the State to introduce the video. (Exhibits,"I,""J,""K.") Thus, having raised this claim on direct appeal, the Defendant is procedurally barred from raising it again in a motion for postconviction relief. Medina v. State, 573 So.2d 293 (Fla. 1990)(affirming the denial of postconviction relief and holding that issues that had been raised or should have been raised on direct appeal are barred in post-conviction proceedings). The Defendant may not use these postconviction proceedings to relitigate issues decided adversely to him on direct appeal. Thus, the Defendant's ground two is procedurally barred and constitutes an abuse of process. Foster v. State, 614 So.2d 455 (Fla. 1992); Ziegler v. State, 632 So.2d 48 (Fla. 1993); Ragan v. State, 643 So.2d 1175 (Fla. 3d DCA 1994). The previous denial of that claim constitutes the law of the case. Raley v. State, 675 So.2d 170 (Fla. 5th DCA 1996). Accordingly, the Defendant's ground two is denied.

(Ex. 19).

Through collateral counsel, Petitioner filed a motion for rehearing in the circuit court wherein he observed without identifying any claim in particular that "the Court denied several of the Defendant's claims because the claims were raised

-28-

by the Defendant on direct appeal." (Ex. 20). Petitioner argued that this was improper because the State had argued in its answer brief on direct appeal "that the claims were not properly preserved for appeal by trial counsel" and, in light of the First DCA having affirmed without opinion, it is unclear whether the First DCA agreed with the State; therefore, Petitioner contended that his post-conviction claims of ineffective counsel were properly raised. (Ex. 20). In support of this position, Petitioner attached a complete copy of the State's direct appeal answer brief to his motion for rehearing. (Ex. 20). The circuit court's denied rehearing, explaining only that "[a]fter a review of the pleadings, the Court does not find any points of law or fact that were overlooked in deciding the Defendant's prior Motion." (Ex. 21). Petitioner then appealed to the Florida First DCA. (Ex. 22).

Through collateral counsel, Petitioner filed an initial brief in the appellate court in which he presented the summary denial of Ground 2 of his amended Rule 3.850 motion as a basis for relief. (Ex. 23, p.15-19). Therein, after quoting the whole of the circuit court's order as to this issue (as quoted above), Petitioner argued:

> ... Contrary to the postconviction court's analysis, Appellant Whittier's claim does not "concern[] the clarity of the images," nor does his claim "challenge the sufficiency of the evidence against him." Appellant Whittier's claim concerns (as stated in his amended rule 3.850 motion) defense counsel's failure to introduce the

> bank video (which would have established that Appellant
> Whittier was not armed during the alleged robbery
> offense). The postconviction court's order completely
> fails to address this claim. Moreover, the attachments to
> the postconviction court's order do not refute this claim
> (i.e., the postconviction court did not attach the
> video).

(Ex. 23, p.18)(parens. in original).

After the State filed notice that it would not file an answer brief, (Ex. 24), the First DCA ordered the State to respond with regard to the above claim why the circuit court's order "should not be reversed and the cause remanded for the trial court to attach portions of the record refuting appellant's allegations or to conduct an evidentiary hearing." (Ex. 25). In its response, after quoting the whole of the circuit court's order as to this issue (as quoted above), the State argued:

> 5. The lower court correctly noted that claims of
> sufficiency of the evidence are not cognizable in a Rule
> 3.850 motion and also correctly noted that the defendant
> cannot re-litigate issues in a Rule 3.850 proceeding that
> were raised on direct appeal. The legal authorities the
> lower court cites are sound.
> 5. If this Court is of the opinion, that Appellant's
> postconviction motion was actually a valid claim of
> ineffective assistance of counsel for failing to
> introduce the videotape in the defendant's case in chief,
> this Court still may affirm the trial court's ruling.
> Even if the videotape is as Appellant asserts and does
> not have any images of him holding a firearm, such
> evidence is of little probative value, inasmuch as it
> shows the same thing that the still photographs showed –
> i.e., that the Defendant did not have a gun in any of the
> pictures. Thus, trial counsel was ineffective for failing
> to produce cumulative evidence.

(Ex. 25). After Petitioner's "reply brief," (Ex. 26), the First DCA affirmed *per curiam* without opinion. (Ex. 27).

In federal habeas, as noted above, Petitioner's claim is a verbatim reproduction of Ground 2 of the amended Rule 3.850 motion authored by collateral counsel. (Ex. 16). First, the state circuit court's determination that, as a challenge to the admissibility or sufficiency of the evidence, Petitioner's claim was barred in post-conviction proceedings under Florida law is correct. (Ex. 21); see Betts v. State, 792 So.2d 589 (Fla. 1st DCA 2001), citing Jackson v. State, 640 So.2d 1173 (Fla. 2d DCA 1994). Relief in federal habeas cannot be issued based on perceived errors of state law. Swarthout v. Cooke, --- U.S. ---, 131 S.Ct 859, 861-862, 178 L.Ed.2d 732 (2011); Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984); Branan v. Booth, 861 F.2d 1507 (11th Cir. 1988); 28 U.S.C. § 2254(a).

Second, in concluding that Petitioner's claim of counsel's ineffectiveness for failing to introduce the videotape into evidence during the defense case-in-chief was procedurally barred because Petitioner had "claimed on direct appeal that the Court erred because it admitted the photographs and did not require the state to introduce the video[,]" the circuit court relied on Petitioner's notice of appeal, statement of judicial acts to be reviewed, and motion for new trial. (Ex. 19, p.6: "Exhibits 'I,' 'J,' 'K.'"). While reference to each of these filings confirm that the issue of the trial court "allowing the State to introduce selected photographs from the ban surveillance video

without requiring the State to also introduce the entire video[]"
was identified as one of several basis for review on direct
appeal, (Ex. 19, p.6: "Exhibits 'I,''J,''K.'"), reference to the
briefs filed in the First DCA on direct appeal confirm that it
was not. (Ex. 45; 46; 47).[6] Thus, the state circuit court's
rejection of Petitioner's claim of ineffective assistance of
counsel on the ground that it was procedurally barred because the
underlying claim of error had previously been litigated on direct
appeal, was erroneous. Nevertheless, this was never brought to
the attention of the First DCA on post-conviction appeal. (Ex.
23; 24; 25; 26; 27; 28).

Still, on the merits in federal habeas, Petitioner is
entitled to no relief. As State argued in its response in the
First DCA on post-conviction appeal, even if the videotape "does
not have any images of him holding a firearm, such evidence is of
little probative value, inasmuch as it shows the same thing that
the still photographs showed - i.e., that the Defendant did not
have a gun in any of the pictures. Thus, trial counsel was
ineffective for failing to produce cumulative evidence." (Ex.
25); see Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1324
n.7 (11th Cir. 2002)("A petitioner cannot establish ineffective

_____

[6] Despite having attached a complete copy of the State's
direct appeal answer brief to his motion for rehearing in the
circuit court, Petitioner did not bring to its attention that
this issue had not been raised as one for review on direct
appeal. (Ex. 20).

assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.").

Furthermore, even if as Petitioner contends he did not possess a firearm while inside The Peoples First Community Bank, the record of jury trial proceedings confirms that under Petitioner's own theory of events, he is guilty of robbery with a firearm under Florida law. (Ex. 29, p.36, 38-39, 41-43, 148, 246-247, 332, 354, 399, 404-405, 421). As the facts of this case reveal, the robbery did not end with Petitioner simply walking out of the bank; rather, his flight from the scene by automobile was part and parcel of that robbery.

At trial, Petitioner contended that the evidence only supported the conclusion that he had armed himself with the short-barreled shotgun only after leaving the bank while inside his car as he was fleeing the scene, but before being stopped by law enforcement.[7] (Ex. 29, p.39-41, 306, 317, 326, 399, 405-409, 414-421). Petitioner maintained this version of events throughout

---

[7] The State presented strong circumstantial evidence that Petitioner was armed with the short-barreled shotgun while inside the bank. When arrested, the shotgun was underneath the blue long sleeve shirt Petitioner was wearing, tied to a piece of rope that was looped over Petitioner's shoulder. (Ex. 29, p.165-169). In addition to his having an object beneath his shirt, witnesses testified that Petitioner was wearing a blue shirt when he robbed the bank and as he was getting into his car to flee the scene. (Ex. 29, p.78, 91, 120-128, 135, 165-169). As the arresting officer opined, it would have been difficult to take the rope off of the shotgun due to the shirt being worn over it without first removing the shirt. (Ex. 29, p.169).

state post-conviction proceedings, representing in his amended Rule 3.850 motion and initial brief on appeal: "The firearm found tied around his body when he was stopped by police was placed on his body after the alleged robbery (for purposes of a possible suicide)." (Ex. 16, p.8 n.4; 23, p.16 n.12)(parens. in original).

Convicted as charged in the instant case, robbery with a firearm is defined under Florida law, as follows:

> (1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
> (2)(a) If **in the course of committing the robbery** the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.
>
> ⁎   ⁎   ⁎
>
> (3)(a) An act shall be deemed "in the course of committing the robbery" if it occurs in an attempt to commit robbery **or in flight after** the attempt or commission.

§ 812.13, Fla.Stat. (2002)(bold added); (Ex. 5; 7; 29).

The trial record confirms that even Petitioner did not perceive his getaway as anything other than part of the robbery. While fleeing the scene by automobile, Petitioner took an evasive maneuver into a subdivision and u-turn around the "island" at its entrance while Deputy Morningstar followed behind him on his marked patrol motorcycle, but did not have his lights and siren

activated. (Ex. 29, p.159-161, 164, 175). Thus, having just robbed a bank, Petitioner was checking to see if the officer behind him was there by mere coincidence or if the officer was intentionally following him by reason of his activities at the bank only moments before. Until he was stopped and arrested after his failed flight from the scene, Petitioner's robbery of the bank was an ongoing event. § 812.13(3)(a), Fla. Stat. (2002). On this matter, the decision Florida First District Court of Appeal in <u>Parker v. State</u>, 570 So.2d 1048, 1053 (Fla. 1st DCA 1990), is dispositive.

Because he armed himself "in the course of committing" that robbery by securing the short-barreled shotgun on his person during his flight from the bank, Petitioner is guilty of robbery with a firearm as a matter of Florida law under his own admitted version of events. (Ex. 29, p.427). Accordingly, there is no reasonable probability that the outcome of his trial would have been different had counsel sought and secured the admission of the surveillance videotape into evidence during the defense case-in-chief. <u>See</u> <u>Strickland</u>, *supra*. Furthermore, trial counsel's "failure" to do so is arguably dictated by a sound trial strategy. Unable to deny that it was Petitioner who robbed the bank and that he was essentially "wearing" a short-barreled shotgun under his shirt when arrested during his flight immediately thereafter, it would have been entirely reasonable

for counsel not to have sought admission of the video during the
defense case-in-chief on the rationale it would have been more
prejudicial for the jury to see Petitioner commit this crime "in
action." See id.; Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir.
1993)("a court should be highly deferential to those choices made
by defense counsel in the conduct of a trial that are arguably
dictated by a reasonable trial strategy"); Rogers v. Zant, 13
F.3d 384, 386 (11th Cir. 1994)("Even if many reasonable lawyers
would not have done as defense counsel did at trial, no relief
can be granted on ineffectiveness grounds unless it is shown that
no reasonable lawyer, in the circumstances, would have done
so.").

     "By its terms § 2254(d) bars relitigation of any claim
'adjudicated on the merits' in state court, subject only to the
exceptions in §§ 2254(d)(1) and (d)(2)." Richter, 131 S.Ct. at
784. Further, the Supreme Court has made it clear that under
Section 2254(d)(1), it is not enough to demonstrate that a state
court's decision is "incorrect or erroneous"; rather, only a
showing that the decision was "objectively unreasonable" will
entitle a petitioner to relief under the AEDPA. Wiggins, 539 U.S.
at 520-521, 123 S.Ct. at 2535. As set out above, Petitioner
cannot "show that the state court's ruling on the claim being
presented in federal court was so lacking in justification that
there was an error well understood and comprehended in existing

-36-

law beyond any possibility for fairminded disagreement." <u>Richter</u>,
*supra*. Accordingly, for those reasons set out above, as well as
in the post-conviction court's order denying 3.850 relief and
affirmed by the Florida First DCA, Petitioner cannot establish
that the Florida courts' denial of post-conviction relief was
contrary to or an unreasonable application of <u>Strickland</u>, or that
it rest upon an unreasonable determination of the facts in light
of the evidence presented. <u>See</u> <u>Wiggins</u>; <u>Miller-El</u>; <u>Williams</u>;
<u>Strickland</u>, *supra*; 28 U.S.C. § 2254(d).

Accordingly, Ground 2 of the amended petition for writ of
habeas corpus must be denied. 28 U.S.C. § 2254(d).

### Ground 3

In this third ground, Petitioner seeks relief in federal
habeas based on a claim that his trial counsel "rendered
ineffective assistance by failing to contest Defendant Whittier's
competency to proceed to trial." (Doc. 6). Petitioner's Ground 3
in federal habeas is a verbatim reproduction of Ground 3 of the
amended Florida Rule 3.850 post-conviction motion authored by
collateral counsel and filed in the state circuit court on
October 12, 2007. (Ex. 16).

The circuit court, after identifying the appropriate
<u>Strickland</u> standards of performance and prejudice applicable to
claims of ineffective assistance of trial counsel, as well as
ruling as a matter of state law that Petitioner's motion was

insufficient for lack of oath, alternatively denied Ground 3, as follows:

In his third ground for relief, the Defendant raises two subclaims. In subclaim one, he alleges that trial counsel was ineffective because she failed to contest the Defendant's competency to proceed to trial. Specifically, he claims that trial counsel did not seek a second opinion with regard to his competency to stand trial. (Defendant's Amended Motion, at 9-10.) In subclaim two, the Defendant claims that the Court did not hold a competency hearing to determine whether he was competent to stand trial. (Defendant's Amended Motion, at 10.) Initially, this Court notes that the Defendant's claims are completely unfounded.

As to subclaim one, this Court notes that prior to stipulating that the Defendant was competent to proceed, the Court issued two Orders Appointing Expert to Examine Defendant and Report to Defendant's Attorney dated April 25, 2003 and August 27, 2003 respectively. (Exhibits "M,""N.") In response to the Order dated April 25, 2003, Dr. Ernest Miller examined the Defendant and found him competent to proceed to trial. (Exhibit "O.")[FN3] In response to the Order dated August 27, 2003, Dr. Umesh Mhatre examined the Defendant and found him competent to proceed to trial. (Exhibit "P.") Thus, the record reflects that trial counsel sought and obtained two expert opinions attesting to the Defendant's competency to proceed to trial independent of the competency finding made by Dr. Marcellus Tayor, Senior Psychologist at Florida State Hospital. (Exhibit "Q.") The Defendant's subclaim one of his third ground for relief is denied.

[FN3] Additionally, in his testimony proffered at trial, Dr. Miller testified under oath as to the Defendant's competency. (Exhibit "H.")

In the Defendant's second subclaim, he alleges that the Court did not hold a competency hearing to determine the Defendant's competency to proceed to trial. However, the Defendant's claim is refuted by the record. On November 6, 2003, the Court held a hearing to determine the Defendant's competency to proceed to trial. (Exhibit "R.") At the hearing, trial counsel submitted Dr. Umesh Mhatre's report for the Court's review. (Exhibit "R," page 3.) Additionally, both parties stipulated that the Defendant was competent to proceed. (Exhibit "R," pages

3-4.) <u>See</u> <u>Fowler v. State</u>, 255 So.2d 513, 514 (Fla. 1971)("where the parties and the judge agree, the trial court may decide the issue of competency on the written reports alone.") referencing <u>Brown v. State</u>, 245 So.2d68 (Fla. 1971), <u>vacated in part on other grounds</u>, 408 U.S. 938 (1972). The Court found that "based upon the report and the stipulation of counsel for both parties that Stephen A. Wittier [was] competent to proceed," and issued an Order Adjudging Defendant Mentally Competent. (Exhibits "R," page 3-4; "S.")

This Court further notes that the Defendant's competency was evaluated at trial prior to the Defendant's testimony. "The test for whether a defendant is competent to stand trial is whether 'he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well has factual understanding of the proceedings against him." <u>Hunter v. State</u>, 660 So.2d 244, 246 (Fla. 1995), <u>citing</u> <u>Dusky v. U.S.</u>, 362 U.S. 402, 402 (1960). At trial, the Court addressed the Defendant as follows:

> The Court:       Mr. Whittier, I would like to ask you a few more questions if you would come forward, please, with your attorney. Mr. Whittier, as you know the defense of insanity has not been raised in this case. Have you had an opportunity to talk with your attorneys about the variety of different defenses that might be available to you in this case, including but not limited to the defense of insanity?

> The Defendant: Yes, I have.

> The Court:       And without sharing with me the privileged communications, have you discussed with your attorney whether ore not the defense of insanity might be a viable defense for you in this case?

> The Defendant: We have discussed that.

> The Court:       Have you talked with her about whether or not there is any expert

testimony that would support that defense?

The Defendant: Yes, Your Honor, we have.

The Court: Has she answered all of your questions about the defense of insanity and whether or not that would be a provable defense in this case?

The Defendant: We have discussed it.

The Court: Has she answered all those questions to your complete satisfaction?

The Defendant: Yes.

The Court: Do you feel that you understand the issue completely?

The Defendant: Yes, because I have spoken with three -- there has been three expert witnesses that interviewed me since I have been back, one before I went to the state hospital and then a team that took care of me for six months at the state hospital, so I understand that there are expert witnesses who have said that I need to be on this medication.

The Court: The question that I am really asking you now is not so much about whether you need to be on that medication currently but whether the defense of insanity is a defense that you want to raise in this case. You have indicated to me that you have talked with your attorneys about whether or not such a defense would be available to you under the state of the facts and the law and expert testimony in this case?

The Defendant: Yes. We discussed it and I agree with the course that we are taking at this moment.

-40-

The Court:        Has anyone pressured you to say
                  that?

The Defendant: No, ma'am.

The Court:        Has anyone threatened you to say
                  that?

The Defendant: No, ma'am.

The Court:        Is anyone promising you anything to
                  say that?

The Defendant: No.

The Court:        And without discussing the results
                  of any confidential evaluations, Ms.
                  Kalil, are there evaluations that
                  have been done in this case on the
                  issue of insanity that not
                  confidential?

Trial Counsel: The only one, Your Honor, is the one
                  by Dr. Miller which I have provided
                  to the Court and that was part of
                  the earlier argument that we had
                  months ago regarding the issue of
                  the medical issues raised in this
                  case.

The Court:        And Mr. Miller's opinion in the
                  court filed then would not support a
                  defense of insanity.

Trial Counsel:  That is correct.

(Exhibit "H." pages 249-252.) This colloquy is
sufficiently thorough and adequately reflects that the
Defendant had sufficient present ability to consult with
his lawyer with a degree of rational understanding and
that he had a rational as well as factual understanding
of the proceedings against him. Moreover, the Defendant
freely and knowingly consented to defense counsel's
strategy of not contesting Defendant's competency.
Consequently, the Defendant's decision to agree with
trial counsel's strategy on the record, precludes his
instant objection to this strategy in subclaim one and
refutes any claim of error raised in subclaim two. Thus,

the Defendant's third ground for relief is denied.
(Ex. 19). Following the denial of his motion for rehearing in which he did not address the denial of this claim, (Ex. 20; 21), Petitioner appealed to the Florida First DCA. (Ex. 22). Through collateral counsel, Petitioner filed an initial brief in the appellate court in which he presented <u>only</u> the summary denial of subclaim two of Ground 3 as a basis for appellate review. (Ex. 23, p.19-22). The State will address each subclaim below, in turn.

### Subclaim one of Ground 3

With collateral counsel's complete omission of the circuit court's denial of subclaim one of Ground 3 from the initial brief as a basis for appellate review, it was abandoned pursuant to established Florida law. <u>See</u> <u>Hall v. State</u>, 823 So.2d 757, 763 (Fla. 2002)("an issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief."); <u>Watson v. State</u>, 975 So.2d 572, 573 & n.1 (Fla. 1st DCA 2008)("Traditionally, when a defendant submits a brief in an appeal from a summary denial of a postconviction motion, this Court may review only those arguments raised and fully addressed in the brief."); <u>Cook v. State</u>, 638 So.2d 134, 135 (Fla. 1st DCA 1994)("[W]e conclude that the only rulings this court must address [on appeal from summary denial of nine post-conviction claims] are those three asserted as error in

appellant's brief."). Therefore, Petitioner did not complete one complete round of the state's established appellate review process with respect thereto that is necessary to satisfy the exhaustion requirement in federal habeas. See O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). Accordingly, subclaim one of Ground 3 in federal habeas is not exhausted. See Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971); 28 U.S.C. § 2254(b)(1)(A).

Having abandoned subclaim one on appeal, Petitioner cannot now return to the state court to exhaust subclaim one of Ground 3 by successive post-conviction motion; accordingly, subclaim one of Ground 3 is procedurally defaulted. See Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999)("Federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."). In Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court held that "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal

law, or demonstrate that failure to consider the claims will
result in a fundamental miscarriage of justice." Id., 501 U.S.
at 750, 111 S.Ct. at 2565. "For cause to exist, an external
impediment, whether it be governmental interference or the
reasonable unavailability of the factual basis for the claim,
must have prevented petitioner from raising the claim."
McCleskey v. Zant, 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113
L.Ed.2d 517 (1991), quoting Murray v. Carrier, 477 U.S. 478,
488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); see Coleman,
501 U.S. at 753-754, 111 S.Ct. at 2566-2567("'cause' under the
cause and prejudice test must be something external to the
petitioner, something that cannot fairly be attributed to him").

Here, Petitioner cannot establish cause because the
inclusion of subclaim one of Ground 3 in his initial brief for
review on appeal was not only a matter entirely within his
control, its omission therefrom by post-conviction counsel was
apparently intentional; (Ex. 23, p.19-22); hence, there is no
external impediment. See Coleman; McCleskey; Murray, supra.
Petitioner's failure to establish cause is alone dispositive.
Johnson v. Singletary, 938 F.2d 1166, 1175 (11th Cir.
1991)("Because Johnson has failed to establish one element of
the cause and prejudice exception, he cannot show the exception
applies."), citing Engle v. Isaac, 456 U.S. 107, 134 n.43, 102
S.Ct. 1558, 1575 n.43, 71 L.Ed.2d 783 (1982); see Coleman,

-44-

*supra*.

Further, "[i]n order to show the type of 'miscarriage of justice' that will excuse a procedural bar, a petitioner must make a colorable showing of actual innocence." Crawford v. Head, 311 F.3d 1288, 1327 (11th Cir. 2002), quoting Isaacs v. Head, 300 F.3d 1232, 1255 (11th Cir. 2002). However, Petitioner asserts no claim of actual innocence. (Doc. 6). Therefore, the "fundamental miscarriage of justice" exception is waived. Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); Coleman, 501 U.S. at 757, 111 S.Ct. at 2568 ("As Coleman does not argue in this Court that federal review of his claims is necessary to prevent a fundamental miscarriage of justice, he is barred from bringing these claims in federal habeas."); Jordan v. Sec. Dept. of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007)("our precedent forbids granting habeas relief based upon a [freestanding] claim of actual innocence, anyway, at least in non-capital cases."); Isaacs, *supra* at 1255 n.10. Also, as Petitioner's claim does not involve any assertion of newly discovered evidence, he can make no "colorable showing of actual innocence." Crawford, *supra*; see Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995), citing Murray, 477 U.S. at 496, 106 S.Ct. 2639; Bousley, *supra*, citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); Herrera v. Collins,

506 U.S. 390, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993); <u>Melson v. Allen</u>, 548 F.3d 993, 1002 (11th Cir. 2008), <u>vacated on other grounds</u> --- U.S. ----, 130 S.Ct. 3491, 177 L.Ed.2d 1081 (2010).

Accordingly, subclaim one of Ground 3 of the amended petition for writ of habeas corpus must be denied.[8]

### Subclaim two of Ground 3

As to subclaim two of Ground 3, Petitioner's claim that trial counsel was ineffective "for failing to require or request the trial court to conduct a competency hearing[]" is, as determined by the state circuit court, "completely unfounded." Indeed, as unpreserved "fundamental error", in ISSUE I of his initial brief on direct appeal, Petitioner unsuccessfully contended that the trial court reversibly erred on November 6, 2003, in failing to conduct a pre-trial competency hearing in light of him having been previously found incompetent to proceed to trial on October 7, 2002. (Ex. 45, p.17-22).

As one of ineffective assistance of counsel, this claim is as lacking in merit now as it was when raised as trial court error on direct appeal. Despite his contention to the contrary, on November 6, 2003 the trial court *did* conduct a competency hearing, the record of which reflects, in relevant part, as follows:

---

[8] Even on the merits, Petitioner is entitled to no relief for those reasons set out in the above-quoted order of the state circuit court. (Ex. 19); 28 U.S.C. § 2254(d).

[DEFENSE COUNSEL]:  Your Honor, at this time I am submitting the report of Dr. Matre (sic) who has found Mr. Whittier competent to proceed, and we are willing to stipulate to that.  I believe the state is willing to stipulate also so that Mr. Whittier can now be adjudged competent to proceed.

THE COURT:  Bear with me just a moment, please.

(The Court reviews the document.)

THE COURT:  I have now read the September 1st, 2003, report of psychiatrist Dr. Umesh Matre (sic) which indicates that in Mr. Matre's (sic) opinion Dr. Whittier is competent and able to proceed in this case.  He does require continued psychotropic medication.
Sir, are you receiving that medication in the Duval County Jail on a regular basis?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Please let your attorney know if at any time you don't get that medication on the basis with which you need it.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  The state also stipulates to competency?

[PROSECUTOR]:  Yes, Your Honor.

THE COURT:  As does the defense?

[DEFENSE COUNSEL]:  Yes, Your Honor.

THE COURT:  The Court finds based upon the report and the stipulation of counsel for both parties that Stephen A. Whittier is competent to proceed in this matter. ....

(Ex. 3; 19: "Exhibit P"; 36). That same day, November 6, 2003,

the trial court entered a written order adjudging Petitioner

"mentally competent to stand trial and assist his attorney in

preparation of his defense." (Ex. 4).[9]

Under Florida law, while "[a] defendant's legal status cannot be adjudicated from incompetent to competent without the benefit of a hearing[,]" by agreement of the parties, the trial court may determine the issue of competency on the basis of written reports without need for a full adversarial hearing. See Jackson v. State, 880 So. 2d 1241, 1243 (Fla. 1st DCA 2004)(citations omitted); Metzgar v. State, 741 So. 2d 1181, 1182-1183 (Fla. 2d DCA 1999), citing Fowler v. State, 255 So. 2d 513, 515 (Fla. 1971). As is clear from the record of those proceedings quoted above, at the hearing on Petitioner's competency, both he and the State expressly agreed that the trial court could determine the issue of competency on the basis of Dr. Mhatre's written report and the trial court did so rely on that written report. (Ex. 3). The record also conclusively establishes that the trial court read Dr. Mhatre's report and based its determination of Petitioner's competency on that report. (Ex. 3). Thus, Petitioner's competency *was* at issue at

---

[9] Notably, Dr. Mhatre, on whose report both parties and the trial court relied, was the defense's own psychiatrist. (Ex. 19: "Exhibit P"; 36). Although not relied upon by the trial court, it is also worthy of noting that the second defense psychiatrist, Dr. Ernest Miller, also found Petitioner competent to proceed, as did the State's psychiatrist, Dr. Marcellus Taylor. (Ex. 19: "Exhibit O" & "Exhibit Q"). Thus, **it was unanimous among all experts who had examined Petitioner after he had been adjudged incompetent that he was now competent to proceed to trial.**

this November 6, 2003, hearing and the trial court adjudged him to be competent *based on* the report of Dr. Mahtre. (Ex. 3). Hence, by agreement, all parties relied upon the written report of Dr. Mhatre in concluding that Petitioner was now competent to proceed. (Ex. 3; 19: "Exhibit P"; 36).

The propriety of the trial court's ruling in the instant case is confirmed by the analysis of the Florida First DCA in Jackson, *supra*. In that case, this Court agreed with the Jackson's contention "that the trial court erred in failing to hold a competency hearing prior to adjudicating him competent to proceed when he had previously been adjudicated incompetent to proceed on four separate occasions." Id. at 1214-1242. After examining the decision of the Second District in Metzgar, *supra*, the First DCA held:

> Although the trial court orally declared appellant competent to proceed based upon certain medical reports, it failed to conduct a proper hearing. The record is devoid of any evidence that the parties agreed to such a procedure. Therefore, because a defendant cannot be adjudicated from incompetent to competent without a competency hearing where he or she has the opportunity to call the court-appointed witnesses ... the court's oral declaration was invalid. Thus, appellant remained incompetent when brought to trial.

Jackson at 1244 (underscore added; citation omitted); see Metzgar, *supra* ("We recognize that in *Fowler* ..., the Florida Supreme Court held that where the parties and the trial court agree, the trial court may decide the issue of competency on the basis of the written reports alone. However, in the present

case, there was no such agreement between the parties and the trial court.").

Thus, had the parties in <u>Jackson</u>, *supra*, agreed to proceed without a full adversarial hearing and to allow the court to base its determination of competency on the medical reports alone, no error would have occurred. <u>Id</u>. at 1243-1244; <u>see</u> <u>Metzgar</u>, *supra*. Such are the facts of the instant case. With Petitioner, the State, and the trial court all having agreed to rely on the written report of Dr. Mhatre in judging Petitioner's competence to proceed to trial, no error occurred as a matter of Florida law. <u>See</u> <u>Jackson</u>; <u>Metzgar</u>; <u>Fowler</u>, *supra*.

Here, Petitioner's claim that his trial counsel was ineffective in failing "to require or request the trial court to conduct a competency hearing" because he had previously been found incompetent, is based entirely on counsel's alleged failure to ensure compliance with Florida law governing determinations of one's return to competency. (Doc. 6). As set out above and in the order of the state circuit court denying post-conviction relief, the trial court *did* conduct a competency hearing as required and in a manner prescribed by Florida law. <u>See</u> <u>Jackson</u>; <u>Metzgar</u>; <u>Fowler</u>, *supra*.

The Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law ...." <u>Mullaney</u>, *supra*. Accordingly, "a state court's interpretation of state law ...

-50-

binds a federal court sitting in habeas corpus." <u>Bradshaw</u>, *supra*. With no error under Florida law as determined by the state court of Florida, there is no basis on which Petitioner's trial counsel can be deemed constitutionally ineffective. <u>See Strickland</u>, *supra*.

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." <u>Richter</u>, 131 S.Ct. at 784. Further, the Supreme Court has made it clear that under Section 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; rather, only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief under the AEDPA. <u>Wiggins</u>, 539 U.S. at 520-521, 123 S.Ct. at 2535. As set out above, Petitioner cannot "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, *supra*. Accordingly, for those reasons set out above, as well as in the post-conviction court's order denying 3.850 relief and affirmed by the Florida First DCA, Petitioner cannot establish that the Florida courts' denial of post-conviction relief was contrary to or an unreasonable application of <u>Strickland</u>, or that it rest upon an unreasonable determination

of the facts in light of the evidence presented. See Wiggins;
Miller-El; Williams; Strickland, *supra*; 28 U.S.C. § 2254(d).

Accordingly, subclaim two of Ground 3 of the amended
petition for writ of habeas corpus must be denied. 28 U.S.C. §
2254(d).

## Ground 4

In this final ground, Petitioner seeks relief in federal
habeas based on a claim that his trial counsel "rendered
ineffective assistance by failing to object to the trial court's
jury instructions regarding whether Defendant Whittier actually
carried a firearm." (Doc. 6). Specifically, Petitioner contends
that "the jury was not required to find 'beyond a reasonable
doubt' that [he] 'actually possessed' a firearm, as required by
the state and federal right to a jury trial and *Apprendi v. New
Jersey*, 530 U.S. 466 (2000)." (Doc. 6). Petitioner's Ground 4 in
federal habeas is a verbatim reproduction of Ground 4 of the
amended Florida Rule 3.850 post-conviction motion authored by
collateral counsel and filed in the state circuit court on
October 12, 2007. (Ex. 16).

The circuit court, after ruling as a matter of state law
that Petitioner's motion was insufficient for lack of oath,
alternatively denied Ground 4, as follows:

> In his fourth ground for relief, the Defendant
> alleges that trial counsel was ineffective for failing to
> object to the Court's jury instruction regarding whether
> the Defendant actually carried a firearm. The Defendant

> claims that trial counsel should have objected because
> the jury was not required to find "beyond a reasonable
> doubt" that the Defendant "actually possessed" a firearm.
> (Defendant's Amended Motion, at 11.)
>
> Prior to filing his initial brief on direct appeal,
> the Defendant raised this claim in a Motion to Correct
> Illegal Sentence filed pursuant to Rule 3.800(b)(2),
> Florida Rules of Criminal Procedure, which was denied on
> the merits on February 28, 2005. (Exhibits "T,""U.")
> Further, the Defendant's argument could or should have
> been raised on direct appeal and is ths procedurally
> barred. Harvey v. Dugger, 656 So.2d 1253 (Fla. 1995);
> Cherry v. State, 659 So.2d 1069 (Fla. 1995). Thus, the
> Defendant's ground four is procedurally barred and
> constitutes an abuse of process. Foster v. State, 614
> So.2d 455 (Fla. 1992); Ziegler v. State, 632 So.2d 48
> (Fla. 1993); Ragan v. State, 643 So.2d 1175 (Fla. 3d DCA
> 1994). Thus, the Defendant's fourth ground for relief is
> denied.

(Ex. 19).

Through collateral counsel, Petitioner filed a motion for

rehearing in the circuit court wherein he observed without

identifying any claim in particular that "the Court denied

several of the Defendant's claims because the claims were raised

by the Defendant on direct appeal." (Ex. 20). Petitioner argued

that this was improper because the State had argued in its

answer brief on direct appeal "that the claims were not properly

preserved for appeal by trial counsel" and, in light of the

First DCA having affirmed without opinion, it is unclear whether

the First DCA agreed with the State; therefore, Petitioner

contended that his post-conviction claims of ineffective counsel

were properly raised. (Ex. 20). The circuit court's denied

rehearing, explaining only that "[a]fter a review of the

pleadings, the Court does not find any points of law or fact that were overlooked in deciding the Defendant's prior Motion." (Ex. 21). Petitioner then appealed to the Florida First DCA. (Ex. 22).

Through collateral counsel, Petitioner filed an initial brief in the appellate court in which he presented the summary denial of Ground 4 of his amended Rule 3.850 motion as a basis for relief. (Ex. 23, p.22-27). The First DCA affirmed *per curiam* without opinion, leaving above judgement of the state circuit court rejecting Petitioner's claim as procedurally barred under Florida law as the last reasoned state court decision addressing Petitioner's claim. (Ex. 27).

The state court record confirms that Petitioner did raise this claim in the trial court by Rule 3.800(b)(2) motion and, following its denial, presented it to the First DCA as ISSUE IV of his initial brief on direct appeal. (Ex. 43; 44; 45, p.26-34). In the First DCA, Petitioner stated the issue presented, as follows:

> WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 3.800(b)(2) MOTION ARGUING THAT THE FAILURE TO INSTRUCT THE JURY TO APPLY THE "BEYOND A REASONABLE DOUBT" STANDARD TO THE FIREARM FINDINGS VIOLATED <u>APPRENDI v. NEW JERSEY</u>?

(Ex. 45, p.26-34). Thus, the state circuit court's factual determination that Petitioner previously raised this claim on direct appeal is supported. See <u>Miller-El</u>, *supra*; 28 U.S.C. §

2254(e).

Accordingly, denied as procedurally barred by the state circuit court and affirmed *per curiam* on appeal, Ground 4 of the instant amended § 2254 petition is barred in federal habeas. Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990)(a state appellate court's *per curiam* affirmation of a lower court's finding of a procedural bar is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by the federal courts).

In the alternative, while the State does not waive above-argued position, 28 U.S.C. § 2254(b)(3), even considering Petitioner's claim of ineffective assistance of counsel on the merits, he is entitled to no relief in federal habeas. See Strickland, *supra*; 28 U.S.C. § 2254(b)(2).

As set forth in the Amended Information, Count I alleged:

   * * *   STEPHEN A. WHITTIER on the 17th day of July,
   2002, in the County of Duval and the State of Florida,
   did carry a firearm, to-wit: a shotgun, and did
   unlawfully by force, violence, assault, or putting in
   fear, take money or other property, to-wit: U.S.
   currency, the property of The Peoples First Community
   Bank, as owner or custodian, from the person or custody
   of Nadine Kwiatek, with the intent to permanently or
   temporarily deprive Nadine Kwiatek of the money or other
   property, and during the commission of the aforementioned
   robbery, the said STEPHEN A. WHITTIER did actually
   possess a firearm, contrary to the provisions of Sections
   812.13(2)(a) and 775.087, Florida Statutes.

(Ex. 5)(underscore added). While robbery without a weapon is a second-degree felony, robbery with a firearm is "a felony of the

-55-

first degree, punishable by imprisonment for a term of years not exceeding life ...." § 812.13(2)(a), (c), Fla.Stat. (2002).

As relevant and as found by the jury, the verdict form reflects:

VERDICT -COUNT I

   X    WE, THE JURY, FIND THE DEFENDANT GUILTY OF ROBBERY, AS CHARGED IN THE INFORMATION.

        1.    IF YOU FIND THE DEFENDANT GUILTY OF THIS OFFENSE, YOU MUST CHOOSE ONE OF THE FOLLOWING:

   X    WE, THE JURY, FIND THAT THE DEFENDANT ACTUALLY POSSESSED A FIREARM DURING THE COMMISSION OF THE ROBBERY.

       WE, THE JURY, FIND THAT THE DEFENDANT CARRIED A DEADLY WEAPON DURING THE COMMISSION OF THE ROBBERY.

       WE, THE JURY, FIND THAT THE DEFENDANT CARRIED A WEAPON DURING THE COMMISSION OF THE ROBBERY.

       WE, THE JURY, FIND THAT THE DEFENDANT DID NOT ACTUALLY POSSESS OR CARRY A FIREARM, DEADLY WEAPON OR WEAPON DURING THE COMMISSION OF THE ROBBERY.

\*   \*   \*

(Ex. 7)(bold omitted). On Count I, Petitioner was sentenced to a term of 20-years' imprisonment, including a mandatory minimum term of 10-years, to be followed by 10-years' probation. (Ex. 8; 42); §§ 775.082(3)(b); 775.087(2)(a)1.c., Fla.Stat. (2002).

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id</u>., 530 U.S. at 490. Under Florida law, "in order to apply the [firearm] enhancement provision of section 775.087(2)(a)(1), the State must prove actual possession." <u>Bundrage v. State</u>, 814 So.2d 1133, 1134 (Fla. 2d DCA 2002). Long before <u>Apprendi</u> was decided, "pursuant to the [Florida] supreme court's decision in *State v. Overfelt*, 457 So.2d 1385 (Fla. 1984)," Florida required the determination of actual possession of a firearm to be determined by jury. <u>Bundrage</u>, *supra*.

Here, Petitioner does not contest that the jury specifically found that he had actual possession of a firearm during the commission of the robbery, but contends that "the jury instructions failed to inform the jury that it must find beyond a reasonable doubt that [he] actually possessed a firearm in order to support the imposition of the firearm enhancement." (Doc. 6; Ex. 45, p.26-34). Specifically, Petitioner alleges that the trial court's instruction that the jury apply the beyond a reasonable doubt standard to the elements of the offense of robbery implied to the jury that it applied only to the elements of robbery to the exclusion of any other finding. (Doc. 6; Ex. 45, p.26-34). It is on this basis that Petitioner contends trial

counsel was ineffective in failing to object to the jury instructions. (Doc. 6; Ex. 16).

However, as discussed below, the trial record confirms that the instructions given adequately informed jury that all material allegations were to be proved beyond a reasonable doubt. (Ex. 29, p.425-450; 42). While Petitioner has only quoted portions of the jury instructions in his amended petition, (Doc. 6; Ex. 16, p.12-13; 45, p.29-30), the instructions given the jury must be considered, not in isolation, but as a whole in the context of the entire record. (Ex. 29, p.425-450; 42); see Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); Smith v. State, 521 So. 2d 106, 108 (Fla. 1988). Nevertheless, as on direct appeal, even that small portion Petitioner quoted in his amended Rule 3.850 motion and in the instant amended petition, conclusively refutes his claim. (Doc. 6; Ex. 16, p.12-13; 29, p.425-428; 45, p.29-30).

Petitioner does not dispute that the record of the instant case shows that the trial court instructed the jury on the beyond a reasonable doubt standard with respect to each of the four elements provided in the statutory definition of "robbery." (Doc. 6; Ex. 16, p.12-13; 29, p.425-428; 45, p.26-34); § 812.13(1), Fla.Stat. (2004). Furthermore, the record confirms that "beyond a reasonable doubt" was the *only* standard on which the jury was instructed. (Ex. 29, p.425-450). After specifically

-58-

instructing the jury on the four elements defining "robbery" that it must find beyond a reasonable doubt, the trial court later instructed:

> The punishment provided by law for the crime of robbery is greater if in the course of committing the robbery the defendant carried some kind of weapon.
>
>     *   *   *
>
> Therefore, if you find the defendant guilty of robbery you must then consider **whether the state has <u>further proved</u>** those **aggravating circumstances and reflect this in your verdict.**
> If you find that the defendant carried a firearm in the course of committing the robbery you should find him guilty of robbery with a firearm.
>
>     *   *   *

(Ex. 29, p.425-428)(bold and underscore added). Thus, in clear, easily understood language, the jury was instructed that the State's burden *remained* beyond a reasonable doubt with respect to "those aggravating circumstances" and, if it were to find any such circumstance further proven, it should be reflected in its verdict.[10] (Ex. 7; 29, p.425-428, 453-454).

---

[10] Furthermore, with his entire defense strategy being to concede guilt to unarmed robbery and to contest only the fact of whether he was armed with a firearm when he committed that robbery, (Ex. 29, p.36, 38-39, 41-43, 148, 246-247, 332, 354, 399, 404-405, 421), Petitioner's counsel repeatedly argued to the jury in closing that the State had failed to carry its burden of proving this fact beyond a reasonable doubt. (Ex. 29, p.352-354, 404-422); <u>see</u> <u>Williams v. State</u>, 400 So. 2d 542, 547 (Fla. 3d DCA 1981)("viewing the instructions and the verdict finding Williams guilty as charged in the information in the context of the issues presented by both sides below, that the judgment under review properly reflects the intent and finding of the jury.")(citations omitted). Thus, counsel focused the jury's attention on this one

In addition, reinforcing its earlier admonitions, the trial court later instructed the jury:

> The defendant has entered a plea of not guilty. This means that you must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation of the information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.

(Ex. 29, p.433-435). Also, the trial court further instructed: "If you return a verdict of guilty it should be for the highest offense which has been proven beyond a reasonable doubt. If you find that no offense has been proven beyond a reasonable doubt then of course your verdict must be not guilty." (Ex. 29, p.438). As the Florida Supreme Court noted in <u>Smith</u>, *supra*: "Despite any shortcomings, the standard jury instructions, as a whole, made it quite clear that the burden of proof was on the state to prove all the elements of the crime beyond a reasonable doubt." <u>Id</u>. at 108.

"[A] jury is presumed ... to follow its instructions." <u>Weeks v. Angelone</u>, 528 U.S. 225, 226, 120 S.Ct. 727, 728, 145 L.Ed.2d 727 (2000); <u>see</u> <u>Francis v. Franklin</u>, 471 U.S. 307, 324 n.9, 105 S.Ct. 1965, 1976 n.9 (1985)("[W]e adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions."); <u>Carter v. Brown & Williamson Tobacco Corp.</u>, 778 So.2d 932, 942 (Fla. 2000). In

---

disputed fact throughout the course of trial and in closing.

denying Petitioner's 3.800(b)(2) motion, the state trial court found that the jury instructions were adequate. (Ex. 44).

"An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999); <u>see</u> <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994)("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992). With the instructions given having adequately informed the jury of the applicable standard of proof, owing counsel's performance the strong measure of deference that <u>Strickland</u> requires, it cannot be said that no reasonable lawyer in the circumstances would not have lodged the objection that Petitioner contends she should have. <u>See</u> <u>id</u>.; <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)("Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.").

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." <u>Richter</u>, 131 S.Ct. at

784. Further, the Supreme Court has made it clear that under Section 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; rather, only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief under the AEDPA. _Wiggins_, 539 U.S. at 520-521, 123 S.Ct. at 2535. As set out above, Petitioner cannot "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." _Richter_, _supra_. Accordingly, for those reasons set out above, as well as in the post-conviction court's order denying 3.850 relief and affirmed by the Florida First DCA, Petitioner cannot establish that the Florida courts' denial of post-conviction relief was contrary to or an unreasonable application of _Strickland_, or that it rest upon an unreasonable determination of the facts in light of the evidence presented. _See_ _Wiggins_; _Miller-El_; _Williams_; _Strickland_, _supra_; 28 U.S.C. § 2254(d).

Accordingly, on the merits, Ground 4 of the amended petition for writ of habeas corpus must be denied. 28 U.S.C. § 2254(d).

WHEREFORE, Respondents respectfully request that this Honorable Court deny relief.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL


 /S/ Bryan Jordan
BRYAN JORDAN
ASSISTANT ATTORNEY GENERAL
FLORIDA BAR NO. 0194603

OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
(850) 922-6674 (fax)
crimapptlh@myfloridalegal.com
[AGO# L10-1-14179]


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS and index of exhibits have been furnished by U.S. Mail to Stephen Allen Whittier, DC# J27347, Tomoka Correctional Institution, 3950 Tiger Bay Rd., Daytona Beach, FL 32124, this ___28___ day of December, 2012.


 /S/ Bryan Jordan
Bryan Jordan
Attorney for the State of Florida

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEPHEN ALLEN WHITTIER,

        Petitioner,

v.

SECRETARY, DEPT. OF CORR.,
ET. AL.,

        Respondents.

CASE NO.: 3:10-cv-166-J-34TEM

**(Exhibits Previously Submitted with Motion
to Dismiss Petition for Writ of Habeas Corpus)(Doc. 16).**

1     Information, case number 02-8712-CF in the Circuit Court of
Duval County, Florida

2     Order adjudicating Petitioner incompetent and of commitment
to Department of Children and Families

3     Proceedings held November 6, 2003

4     Order adjudicating Petitioner mentally competent, dated
November 6, 2003

5     Amended Information

6     Petitioner's motion to sever; Order granting severance

7     Verdict forms

8     Judgement and sentence; Order of probation

9     Notice of direct appeal

10    Decision and Mandate of the Florida First DCA on direct
appeal

11    Fla.R.Crim.P. 3.850 motion for post-conviction relief

12    Motion for competency determination

13 Motion for leave to amend Fla.R.Crim.P. 3.850 motion for post-conviction relief

14 Motion for leave to amend Fla.R.Crim.P. 3.850 motion for post-conviction relief

15 Motion for leave to amend Fla.R.Crim.P. 3.850 motion for post-conviction relief

16 Amended Fla.R.Crim.P. 3.850 motion for post-conviction relief

17 Motion to direct State to file a response to Amended Fla.R.Crim.P. 3.850 motion for post-conviction relief

18 Order denying motion for competency determination

19 Order denying Amended Fla.R.Crim.P. 3.850 motion for post-conviction relief (attached exhibits "O", "P", and "Q" omitted)

20 Motion for rehearing of order denying Amended Fla.R.Crim.P. 3.850 motion for post-conviction relief

21 Order denying motion for rehearing of order denying Amended Fla.R.Crim.P. 3.850 motion for post-conviction relief

22 Notice of appeal of denial of amended Fla.R.Crim.P. 3.850 motion for post-conviction relief

23 Initial brief on Fla.R.Crim.P. 3.850 post-conviction appeal

24 State's Fla.R.App.P. 9.141(b) notice of no answer brief on Fla.R.Crim.P. 3.850 post-conviction appeal

25 Order of the Florida First DCA directing the State to show cause pursuant to *Toler v. State*, 493 So. 2d 489 (Fla. 1st DCA 1986); State's response to order to show cause

26 Reply brief on Fla.R.Crim.P. 3.850 post-conviction

27 Decision and Mandate of the Florida First DCA on Fla.R.Crim.P. 3.850 post-conviction appeal

28 Motion for rehearing on Fla.R.Crim.P. 3.850 post-conviction appeal; Order of the Florida First DCA denying rehearing

**(Additional Exhibit submitted with Respondents' Response to Petitioner's Third Motion to Supplement the Record)(Doc. 35).**

29   Trial proceedings held September 14 and 15, 2004

**(Additional Exhibits to Answer
to Petition for Writ of Habeas Corpus)**

29A  Trial excerpt (corrected placement of sidebar conference)

30   Arrest report

31   State's supplemental notice of discovery of August 16, 2002

32   Orders appointing expert to examine Petitioner, dated August 28, 2002 and September 10, 2002

33   Report of Dr. Larry Neidigh, Ph.D., dated September 11, 2002

34   Notice of discharge, Florida State Hospital (Omitted)

35   Order appointing expert, Dr. Ernest Miller, to examine Petitioner

36   Order appointing expert, Dr. Umesh Mhatre, to examine Petitioner

37   Order appointing expert, Dr. Harry Krop, to examine Petitioner, dated March 4, 2004

38   Petitioner's motion for continuance; Order granting

39   Proceedings on Petitioner's motion to sever and State's first motion *in limine* held June 1 and 29, 2004

40   State's first motion *in limine* filed June 1, 2004; Order granting

41   Petitioner's motion for new trial filed September 28, 2004; Order denying

42   Sentencing proceedings held November 1 and 8, 2004

43   Petitioner's Fla.R.Crim.P. 3.800(b)(2) motion to correct sentencing error

44    Order denying Fla.R.Crim.P. 3.800(b)(2) motion

45    Initial brief on direct appeal

46    Answer brief on direct appeal

47    Reply brief on direct appeal

48    <u>Jones v. Sec'y, Fla. Dept. of Corr.</u>, 2012 WL 6028995 (11th
      Cir. Dec. 5, 2012)(unpublished)

49    Fla.R.Crim.P. 3.850 motion for post-conviction relief filed
      June 29, 2012

50    Order denying June 29, 2012 Rule 3.850 motion for post-
      conviction relief

51    Notice of appeal from order denying June 29, 2012 Rule
      3.850 motion

52    Initial brief on appeal from order denying June 29, 2012
      Rule 3.850 motion

53    State's notice of no answer brief on appeal from order
      denying June 29, 2012 Rule 3.850 motion

54    Docket, Florida First DCA case number 1D12-4895