UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEPHEN ALLEN WHITTIER,

                    Petitioner,

v.                                    Case No. 3:10-cv-166-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.
_____

## ORDER

### I. Status

     Petitioner Stephen Allen Whittier, an inmate of the Florida
penal system, initiated this action by filing a pro se Petition for
Writ of Habeas Corpus (Doc. #1) with exhibits (P. Ex.) under 28
U.S.C. § 2254 on February 22, 2010, pursuant to the mailbox rule.
Whittier filed an Amended Petition (Doc. #6) on May 5, 2010.
Whittier challenges a 2004 state court (Duval County, Florida)
judgment of conviction for armed robbery and possession of a short-
barreled shotgun.  Respondents submitted a memorandum in opposition
to the Amended Petition on December 28, 2012.  See Respondents'

Answer to Petition for Writ of Habeas Corpus (Response) (Doc. #40) with exhibits (Resp. Ex.).  Whittier submitted a brief in reply on February 22, 2013.  See Petitioner's Reply Brief (Doc. #48).  This case is ripe for review.

## II. Procedural History

On August 1, 2002, the State of Florida charged Stephen Allen Whittier with armed robbery (count one) and possession of a short-barreled shotgun (count two).  Resp. Ex. 1, Information.  The State, on August 16, 2002, gave notice that it had provided the defense with the bank's videotape.  Resp. Ex. 31, State's First Supplemental Discovery Exhibit.  Upon Whittier's motion for an expert witness to assist in preparation of a defense, the court appointed Community Behavioral Services to examine Whittier in order to assist the defense in the preparation of its case.  Resp. Ex. 32, Orders Appointing Expert to Examine Defendant, dated August 28, 2002, and September 10, 2002.

On September 11, 2002, Dr. Larry Neidigh, Ph.D., a licensed psychologist with Community Behavioral Services, opined that Whittier was not competent to proceed and that the issue of his sanity at the time of the offense "should be deferred until his current condition is stabilized."  Resp. Ex. 33.  Based on Dr. Neidigh's report, the court, on October 4, 2002, adjudged Whittier incompetent to proceed and committed him to the custody of the Department of Children and Families (DCF) for treatment.  Resp. Ex.

2

2, Order Adjudging Defendant Incompetent to Proceed and Commitment to Department of Children and Families.

Six months later, relying upon the competency evaluation of Dr. Marcellus Taylor, Ph.D., Senior Psychologist at Florida State Hospital, DCF notified the court that Whittier was competent to proceed and no longer met the criteria for involuntary commitment. Resp. Ex. 19, attached exhibit Q, Letter, dated March 27, 2003; Competency Evaluation, dated March 26, 2003.[1]  Accordingly, on April 17, 2003, Whittier was discharged from involuntary commitment.  Resp. Ex. 34, Notice of Discharge, Florida State Hospital.[2]

On April 25, 2003, upon Whittier's motion, the court appointed Dr. Ernest Miller, M.D., to examine Whittier in order to assist the defense in the preparation of its case.  Resp. Ex. 35, Order Appointing Expert to Examine Defendant and Report to Defendant's Attorney.  After examining Whittier over a period from April 29, 2003, through May 23, 2003, Dr. Ernest Miller, M.D., opined that Whittier was competent to proceed.  See Resp. Ex. 19, attached

---

[1] With the Court's permission, see Order (Doc. #17), filed October 28, 2010, Respondents filed the following documents under seal: exhibits O (July 28, 2003 Report by Dr. Ernest C. Miller, M.D.); P (September 1, 2003 Report by Dr. Umesh M. Mhatre, M.D., P.A.); and Q (March 26, 2003 Report by Dr. Marcellus Taylor, Ph.D.), cited in the circuit court's order denying the Rule 3.850 motion.

[2] See Order (Doc. #41), filed January 7, 2013; Order (Doc. #43) (directing the Clerk to file Exhibit 34 under seal), filed January 8, 2013.

exhibit O, Letter, dated July 28, 2003.[3]  Then, on August 27, 2003, the court referred Whittier for a psychiatric evaluation by Dr. Umesh M. Mhatre, M.D.  Resp. Ex. 36, Order Appointing Expert to Examine Defendant and Report to Defendant's Attorney.

Dr. Mhatre examined Whittier on September 1, 2003, and concluded that Whittier was competent to proceed to trial and was sane at the time of the offense.  Resp. Ex. 19, attached exhibit P, Report, dated September 1, 2003.[4]  Based upon Dr. Mhatre's report, the defense and the State stipulated to Whittier's competency, and the court adjudged Whittier competent to stand trial and assist his attorney in preparation of the defense.  Resp. Exs. 3, Transcript of November 6, 2003 Hearing; 4, Order Adjudging Defendant Mentally Competent, filed November 6, 2003.  The court, on March 5, 2004, appointed Dr. Harry Krop to examine Whittier. Resp. Ex. 37, Order Appointing Expert to Examine Defendant and Report to Defendant's Attorney.

On March 25, 2004, the court granted Whittier's motion for continuance.  Resp. Ex. 38.  That same day, in addition to the previously-charged counts, the State of Florida charged Whittier with an additional count:  possession of a concealed weapon by a convicted felon (count three).  Resp. Ex. 5, Amended Information.

---

[3] See Order (Doc. #17) (granting leave to file exhibits O, P, and Q under seal).

[4] See Order (Doc. #17).

On May 5, 2004, Whittier filed a motion to sever count three from the trial of counts one and two. Resp. Ex. 6, Motion for Severance of Counts. On June 1, 2004, the court granted Whittier's motion for severance. Id., Order; Resp. Ex. 39, Transcript. Additionally, on June 1, 2004, the State filed its first motion in limine, seeking to prohibit Whittier from presenting evidence of a mental health defense or voluntary intoxication. Resp. Ex. 40, State's First Motion in Limine. After hearings on June 1st and 29th, the court granted the State's motion. Resp. Exs. 39, Transcript; 40, Order.

After jury selection, Whittier proceeded to trial on counts one and two. Resp. Exs. 29; 29A, Transcripts of the Jury Trial (Tr.). At the conclusion of trial, a jury found Whittier guilty of both counts. Resp. Ex. 7, Verdicts, dated September 16, 2004; Tr. at 453-54. The court denied Whittier's motion for a new trial. Resp. Exs. 41; 42, Transcript of Sentencing (Sentencing Tr.). On November 1, 2004, the trial court sentenced him to a term of twenty years of imprisonment for count one and a term of fifteen years of imprisonment for count two, such term to run concurrently to the sentence imposed for count one. Sentencing Tr. at 219-21; Resp. Ex. 8, Judgment.

On February 28, 2005, Whittier, through counsel, filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). He asserted that the court

improperly enhanced his sentence on count one based upon the aggravating circumstance that he possessed a firearm during the commission of the armed robbery and that the jury was not instructed that they must find the aggravator beyond a reasonable doubt. Resp. Ex. 43. The court denied the motion on April 19, 2005. Resp. Ex. 44.

On appeal, Whittier, through counsel, filed an Initial Brief, arguing that the trial court committed fundamental error in failing to hold a competency hearing when Whittier had been previously adjudicated incompetent to proceed to trial (ground one); the trial court erred in excluding Dr. Miller's expert testimony, which was proffered by Whittier to show that he had suffered from metabolic acidosis at the time of the offense (ground two); the trial court erred in sustaining the State's hearsay objection to Detective Valentine's testimony that the victim described the suspect as wearing a long brown leather holster under his shirt (ground three); and the trial court erred in denying Whittier's Rule 3.800(b)(2) motion, in which he argued that the "beyond a reasonable doubt" standard to the firearm finding violated Apprendi v. New Jersey, 530 U.S. 466 (2000), (ground four). Resp. Ex. 45, Initial Brief of Appellant. The State filed an Answer Brief, see Resp. Ex. 46, and Whittier filed a Reply Brief, see Resp. Ex. 47. On September 30, 2005, the appellate court affirmed Whittier's conviction and sentence per curiam without issuing a written

opinion, see Whittier v. State, 912 So.2d 1222 (Fla. 1st DCA 2005);
Resp. Ex. 10, and the mandate issued on October 18, 2005, see Resp.
Ex. 10.  Whittier did not seek review in the United States Supreme
Court.

On December 14, 2006, Whittier, through counsel, filed a
motion for post conviction relief pursuant to Florida Rule of
Criminal Procedure 3.850.[5]  Resp. Ex. 11.  In his request for post
conviction relief, he asserted that defense counsel was ineffective
because she failed to: pursue an involuntary intoxication defense
based on Whittier's metabolic acidosis (ground one); contest
Whittier's competency to proceed to trial (ground two); and object
to the trial court's jury instructions regarding whether Whittier
actually carried a firearm (ground three).  Additionally, Whittier
asserted that the jury instructions did not require the jury to
find beyond a reasonable doubt that he had carried a firearm during
the robbery.  That same day, Whittier, through counsel, filed a
motion for competency determination, see Resp. Ex. 12, and motion
seeking ninety days to amend the Rule 3.850 motion, see Resp. Ex.
13.  Later, Whittier, through counsel, filed additional motions
seeking extensions of time to amend the Rule 3.850 motion.  Resp.
Exs. 14; 15.

---

[5] Whittier is not entitled to the benefit of the mailbox rule
since he was represented by counsel throughout the post-conviction
proceedings.

On October 12, 2007, Whittier, through counsel, filed an amended Rule 3.850 motion. Resp. Ex. 16. In his request for post conviction relief (Rule 3.850 motion), he asserted that defense counsel was ineffective because she failed to: pursue an involuntary intoxication defense based on Whittier's metabolic acidosis and request an involuntary intoxication jury instruction (ground one); introduce the bank video which would have established that Whittier was not armed during the robbery (ground two); contest Whittier's competency to proceed to trial (ground three); and object to the trial court's jury instructions regarding whether Whittier actually carried a firearm (ground four). Additionally, Whittier asserted that the jury instructions did not require the jury to find beyond a reasonable doubt that he had carried a firearm during the robbery. Whittier, on July 16, 2008, filed a motion to direct the State to respond to the motion. Resp. Ex. 17. The circuit court, on September 16, 2008, denied Whittier's motion for a competency determination, see Resp. Ex. 18, and denied his amended Rule 3.850 motion, see Resp. Ex. 19; the court later denied his motion for rehearing, see Resp. Ex. 20; 21.

On appeal, Whittier, through counsel, filed an initial brief, see Resp. Ex. 23, and the State filed a notice that it would not file an answer brief, see Resp. Ex. 24. The appellate court, on September 23, 2009, directed the State to show cause "why the denial of [Whittier's] motion should not be reversed and the cause

remanded for [him] to sign a proper oath." Resp. Ex. 25.  Later, the State responded, see id., and Whittier filed a reply brief, see Resp. Ex. 26. The appellate court affirmed the trial court's decision per curiam on December 15, 2009, see Whittier v. State, 26 So.3d 586 (Fla. 1st DCA 2009); Resp. Ex. 27, and later denied Whittier's motion for rehearing, see Resp. Ex. 28.  The mandate issued on February 9, 2010.  Resp. Ex. 27.

Whittier, on June 29, 2012, filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, asserting counsel was ineffective because she advised him to reject a plea offer and, as a result, he declined a plea offer that would have resulted in a fifteen-year sentence for armed robbery. Resp. Ex. 49.  The circuit court, on September 17, 2012, denied the Rule 3.850 motion as untimely and successive.  Resp. Ex. 50.   On appeal, Whittier filed an initial brief, see Resp. Ex. 52, and the State filed a notice that it would not file an answer brief, see Resp. Ex. 53.   The appellate court affirmed the trial court's decision on March 5, 2013.[6]

---

[6] Online docket, Stephen Whittier vs. State of Florida, Case No. 1D12-4895, website for the First District Court of Appeal (http://www.1dca.org).

### III. One-Year Limitations Period

For this Court's analysis, the Court will assume that Whittier's Rule 3.850 motion[7] was properly filed and that he timely filed the Petition in this Court.  See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Whittier's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

---

[7] Whittier, through counsel, filed the first Rule 3.850 motion on December 14, 2006.  See Resp. Ex. 11.

As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an

> "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[8] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Whittier's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense

---

[8] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id</u>., at 687, 104 S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the

prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citation omitted).   "Surmounting Strickland's high bar is never an easy task." Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[9], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933.  And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by

---

[9] Knowles v. Mirzayance, 556 U.S. 111 (2009).

<u>Strickland</u>, the AEDPA adds another layer of deference--this one to
a state court's decision--when we are considering whether to grant
federal habeas relief from a state court's decision.").

### VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Whittier asserts that counsel was ineffective
because she failed to (a) pursue an involuntary intoxication
defense based on Whittier's metabolic acidosis, and (b) request a
jury instruction on involuntary intoxication.  Whittier raised this
ineffectiveness claim in his Rule 3.850 motion.  Identifying the
two-prong <u>Strickland</u> ineffectiveness test as the controlling law,
the trial court denied the Rule 3.850 motion with respect to this
claim, stating:

> In his first ground for relief, the
> Defendant raises two subclaims. In subclaim
> one he alleges trial counsel was ineffective
> because she did not raise involuntary
> intoxication as a defense, (Defendant's
> Amended Motion, at 5.) In subclaim two, he
> alleges trial counsel was ineffective because
> she did not request a jury instruction on
> involuntary intoxication. (Defendant's Amended
> Motion, at 7.)
>
> In subclaim one, the Defendant alleges
> that trial counsel should have mounted an
> involuntary intoxication defense based on a
> condition called metabolic acidosis. The
> Defendant correctly notes that involuntary
> intoxication has been recognized as a defense
> to specific intent crimes in Florida in
> circumstances where a defendant unknowingly
> ingested a substance that impaired the
> defendant or where prescribed medication
> caused the defendant's criminal conduct.

(Defendant's Amended Motion, at 5-6.) However, in this case, the record reflects that the defense of involuntary intoxication by metabolic acidosis was not available to the Defendant because there was no evidence that the Defendant suffered from metabolic acidosis at the time of the crime. (Exhibits "G," pages 16-17; "H," pages 261-271.)[10] Further, in granting the State's First Motion in Limine, the Court specifically concluded that evidence regarding metabolic acidosis was inadmissable [sic] at trial. (Exhibit "G," page 18.) Moreover, at trial, the Court reiterated that its ruling regarding metabolic acidosis remained the same. (Exhibit "H," page 272.)

Initially, this Court notes that on direct appeal the Defendant claimed the Court erred in its ruling that evidence regarding metabolic acidosis was inadmissable [sic] at trial. (Exhibits "I," "J," "K.")[11] Thus it appears that the Defendant is attempting to relitigate his previously denied claim in the guise of ineffective assistance of counsel. However, the Defendant, having raised this claim on direct appeal, is procedurally barred from raising it again in a motion for postconviction relief. Medina v. State, 573 So.2d 293 (Fla. 1990) (affirming the denial of postconviction relief and holding that issues that had been raised or should have been raised on direct appeal are barred in post-conviction proceedings). The Defendant may not use these postconviction proceedings to relitigate issues decided a[d]versely to him on direct appeal. Thus, the Defendant's subclaim one is procedurally barred and constitutes an abuse of process. Foster v. State, 614 So.2d 455 (Fla. 1992); Ziegler v. State, 632 So.2d 48 (Fla. 1993); Ragan v. State, 643 So.2d 1175 (Fla. 3d DCA 1994). The previous denial of that claim constitutes the law of the case. Ralev v. State, 675 So.2d 170

---

[10] See Resp. Ex. 39; Tr.

[11] See Resp. Exs. 45; 46; 47.

(Fla. 5th DCA 1996). Accordingly, the Defendant's subclaim one of his first ground for relief is denied.

In subclaim two, the Defendant alleges that trial counsel was ineffective because she failed to request that an involuntary intoxication instruction be given to the jury. As discussed <u>supra</u>, the Court ruled that evidence of metabolic acidosis was inadmissable [sic] at trial. (Exhibits "G," "H.") As the Defendant fails to show that there was any evidence to support a request by trial counsel for an involuntary intoxication instruction, the Defendant's subclaim two of his first ground for relief is denied. Accordingly, the Defendant's first ground is denied.

Resp. Ex. 19 at 91-92. On appeal, the appellate court affirmed the denial per curiam.

To the extent that the appellate court may have affirmed the denial of Whittier's motion for post conviction relief on the merits, Whittier would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state courts' adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Whittier is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Whittier's claim is still without merit because the trial court's conclusion is supported by the record. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Whittier must establish that no competent attorney would have taken the action that counsel, here, chose. <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), <u>cert</u>. <u>denied</u>, 552 U.S. 990 (2007). Whittier has failed to carry this burden.

Given the record, counsel's performance was well within the wide range of professionally competent assistance. The following facts are pertinent for consideration of the claim. The State, on

June 1, 2004, filed a motion in limine, requesting the court to "prohibit any and all argument, testimony, or evidence regarding the mental health defense of insanity or any other kind of mental health defense."  Resp. Ex. 40, State's First Motion in Limine. After a June 1, 2004 hearing, <u>see</u> Resp. Ex. 39 at 1-14, the court denied the motion on June 29, 2004, stating:

> The Court considered the argument made by both attorneys and has reviewed all of the case law provided and has as well done its own research.
>
> The defendant seeks to use testimony from the evaluating psychiatrist that he suffered from metabolic acidosis nine days before the crime charged in this case.  In the opinion of the evaluating psychiatrist, Dr. Ernest Miller, the defendant was not insane at the time of the crime.  Dr. Miller reports based upon the history provided by the defendant that the defendant, quote, "had been drinking all along to some degree," close quote.
>
> **The state and the defense agree that voluntary intoxication is not a defense in the case, and the defense has indicated that it doesn't seek to introduce the testimony with regard to metabolic acidosis on that issue. The defense seeks to introduce testimony about that issue to show that at the time of the crime the defendant suffered from a physical defect.**
>
> But the Court has been unable to locate any case in this country in which the fact that the defendant suffered from metabolic acidosis was admitted in any criminal trial. Indeed the phrase has seldom been used in cases in any jurisdiction and only once in a Florida case, at least that this Court was able to locate, and that case was a civil case.

The defendant seems to be suggesting that if he suffered from metabolic acidosis at the time of the crime, then he would have been unable to form the specific intent to commit the crime.

The Court sees several problems with the admissibility of this testimony. Dr. Miller's report indicates that Shands Medical Center records show that nine days before the offense the defendant suffered from metabolic acidosis but that the hospital records from Florida State Hospital, which records were created after the offense, show no such metabolic acidosis.

Clearly then metabolic acidosis can be corrected or can disappear. **The Court has not been presented any testimony regarding whether on the date of the crime the defendant suffered from metabolic acidosis.**

Dr. Miller testified that metabolic acidosis may -- that was his word -- cause vague lassitude, nausea, and vomiting leading to irritability, auditory and visual hallucinations, headaches, and confusion.

Although Dr. Miller concludes somewhat ambiguously that this, quote, "unquestionably factored into his behavior," close quote, **there has been testimony that the defendant was suffering those symptoms nine days -- excuse me, suffering those symptoms at Shands nine days before the crime or was suffering those symptoms during the crime.**

Third, and significantly to the Court, the metabolic acidosis due to self-neglect as reported by Dr. Miller appears to be related in whole or in significant part to the defendant's voluntary intoxication. Many physical changes occur in the body with voluntary intoxication and particularly with prolonged voluntary intoxication.

**Admission of testimony about the metabolic acidosis would therefore be a back door method of implicitly defending on an impermissible defense of voluntary intoxication. The evidence may not be introduced to show diminished capacity because the defendant is not contending that he was insane at the time of the crime.[12]**

The Court also concludes that to the extent that the evidence may have any relevance, its probative value is substantially outweighed by the danger that the jury will be confused and will use the evidence in an impermissible manner. Consequently, the state's motion in limine is granted.

Id. at 15-18 (emphasis added).

At trial, after opening statements and prior to the State calling its first witness, the following colloquy ensued outside the presence of the jury:

---

[12] At the time of the offense on July 17, 2002, voluntary intoxication was no longer a valid defense in Florida. See Fla. Stat. § 775.051 (1999). Additionally, evidence of diminished capacity was not and has never been admissible under Florida law on the issue of criminal intent. See State v. Bias, 653 So.2d 380, 382-83 (Fla. 1995) ("We continue to adhere to the rule that expert evidence of diminished capacity is inadmissible on the issue of mens rea. It is for this reason that we have set forth these limitations regarding the admissibility of evidence of mental disease or defect within the defense of voluntary intoxication. We want to ensure that the defense of voluntary intoxication is not utilized as a label for what in reality is a defense based upon the doctrine of diminished capacity."); Chestnut v. State, 538 So.2d 820 (Fla. 1989) (holding that evidence of abnormal mental condition not constituting legal insanity is inadmissible for purposes of proving either that the accused could not or did not entertain the specific intent or state of mind essential to proof of the offense, in order to determine whether the crime charged, or a lesser degree of the crime, was in fact committed).

THE COURT: The jury is in the jury room and the door to that jury room is shut.  Mr. Whittier, I just wanted to ask you a question. You have heard Ms. Kalil during opening statement tell the jury that you will be admitting that you committed the robbery in this case but that you will be contending that the robbery was unarmed rather than armed. Did you hear that during the opening statement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I don't want you to tell me the nature of your conversations with Ms. Kalil but I just want to know whether you had a full and complete opportunity to talk with Ms. Kalil about trial tactics and strategy in the case?

THE DEFENDANT: Yes, I have.  **I have great confidence in Ms. Kalil.**

THE COURT: And have you asked her all questions you had about what strategy or tactics have been pursued in the case?

THE DEFENDANT: Yes.

THE COURT: Has she answered all your questions to your complete satisfaction?

THE DEFENDANT: Yes.

THE COURT: Do you need any more time to think or to talk with her about matters of trial tactics?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you support this strategy which opening statement would indicate is being pursued which is to admit that you committed the robbery but you contend that it was unarmed?

THE DEFENDANT: After seeing everything that's been brought up, yes, Your Honor.

> THE COURT: And do you reach the decision supporting the tactic being pursued freely and voluntarily?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did anyone pressure you or coerce or threaten you or promise you anything to get you to support this trial strategy?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Mr. Whittier, I appreciate the information and I thank you.

Tr. at 42-43 (emphasis added).

Later, during trial, defense counsel revisited the issue relating to metabolic acidosis.

> MS. KALIL: And, Your Honor, I think the first issue that you just addressed regarding his disorders relates directly to what we already addressed earlier in the state's Motion in Limine.   That was along the same lines that -- evidence that I wanted to present at trial which we weren't going to present.
>
> THE COURT: Remind me.
>
> Ms. Kalil: The state seems to think that it was regarding the insanity defense but it was not the instant [sic] defense.   It was actually the physical infirmity which he was suffering from which is metabolic acidosis.
>
> THE COURT: I do remember the motion.   The Court's rulings remain the same but as I indicated if the testimony develops in such a way that you believe it's appropriate to revisit that issue then I would certainly be happy to talk about that with you and the state.

Id. at 150-51.

23

After denying Whittier's motion for judgment of acquittal, the court questioned Whittier regarding available defenses, and the following colloquy ensued.

> THE COURT: Mr. Whittier, I would like to ask you a few more questions if you would come forward, please, with your attorney.   Mr. Whittier, as you know[,] the defense of insanity has not been raised in this case. Have you had the opportunity to talk with your attorneys about the variety of different defenses that might be available to you in this case, including but not limited to the defense of insanity?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: And without sharing with me the privileged communications, have you discussed with your attorney whether or not the defense of insanity might be a viable defense for you in this case?
>
> THE DEFENDANT: We have discussed that.
>
> THE COURT: Have you talked with her about whether or not there is any expert testimony that would support that defense?
>
> THE DEFENDANT: Yes, Your Honor, we have.
>
> THE COURT: Has she answered all of your questions about the defense of insanity and whether or not it would be a provable defense in this case?
>
> THE DEFENDANT: We have discussed it.
>
> THE COURT: Has she answered all those questions to your complete satisfaction?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you feel that you understand the issue completely?

24

THE DEFENDANT: Yes, because I have spoken with three -- there has [sic] been three expert witnesses that interviewed me since I have been back, one before I went to the state hospital and then a team that took care of me for six months at the state hospital, so I understand what's going on and I understand that there are expert witnesses who have said that I need to be on this medication.

THE COURT: The question that I am really asking you now is not so much about whether you need to be on that medication currently but whether the defense of insanity is a defense that you would want to raise in this case. You have indicated to me that you have talked with your attorneys about whether or not such a defense would be available to you under the state of the facts and the law and the expert testimony in the case?

THE DEFENDANT: Yes. **We discussed it and I agree with the course that we are taking at this moment.**

THE COURT: Has anyone pressured you to say that?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone threaten[ed] you to say that?

THE DEFENDANT: No. ma'am.

THE COURT: Is anyone promising you anything to say that?

THE DEFENDANT: No.

Id. at 249-52 (emphasis added).

Next, defense counsel proffered the testimony of Dr. Ernest Miller, M.D. During the proffer, see id. at 254-71, Dr. Miller explained metabolic acidosis, see id. at 261-62, and concluded that

suffering from metabolic acidosis would affect behavior, see id. at 262-63.  Defense counsel inquired as to what effect the condition would have on Whittier's behavior on the date of the offense.

> [DEFENSE COUNSEL]: Would what he was suffering from, this metabolic acidosis, could that have had some effect on him on the date of his arrest?
>
> [DR. MILLER]: It could have had some effect on him in a continuity from the point it was first identified and certainly from before.  I don't know.  **I have no factual basis for that because there are no determinations subsequent to that which was obtained at the Shands Hospital on the 8th that give -- that would reveal the presence of acidosis or not in his system but certainly that's a possibility.**
>
> [DEFENSE COUNSEL]: Would suffering from that medical condition affect someone's behavior?
>
> [DR. MILLER]: It would indeed.  It would cause -- depending on the degree of acidosis, varying levels of dementia or interference in cognitive processes, restlessness, fatigueability [sic], agitation, certainly poor judgment.  All these things depending on the levels of acidosis and other factors which may be contributing.

Id. at 262-63 (emphasis added).  When the prosecutor inquired as to Whittier's level of acidosis, Dr. Miller responded:

> They [(the physicians at Shands Hospital)] did not do a blood pH.  At 7.2 which is a less degree of acidity.  Mild symptoms begin at 7.1 which is a greater acid level there are more profound symptoms.  **I have no idea what they were.** [Whittier] was able to converse apparently with the physicians at Shands Hospital as they recorded it.

Id. at 266 (emphasis added).  Acknowledging that he did not have any independent analysis as to the condition, Dr. Miller stated: "The only access I have to that and the basis of my rendering an opinion thus was [sic] the laboratory reports from Shands." Id.

The court then inquired as to whether the records from Shands "give any indication of any dementia at that time on the part of [Whittier] or any restlessness, agitation, fatigue, poor judgment or interference with cognitive processes." Id. at 270.  Dr. Miller answered in the negative.  Id.  Thus, noting that it had already issued its order on the State's motion in limine with respect to the issue of metabolic acidosis, the court concluded that the "ruling remains the same . . . ."[13]  Id. at 272.

On direct appeal, Whittier, through counsel, argued that the trial court erred in excluding Dr. Miller's proffered testimony, "offered to explain [Whittier's] loss of consciousness at the time of the robbery or to explain [Whittier's] inability to recall the events of the robbery." Resp. Ex. 45 at 23.  He also asserted that Dr. Miller's proffered testimony of metabolic acidosis was admissible because it was "relevant to the question of whether [Whittier] was capable of forming the requisite criminal intent at the time of the offense due to lack of consciousness, or simply relevant to explain why [Whittier] could not remember the details

_____

[13] The court stated that it understood "the proffer ha[d] been made for the purpose of appellate review."  Tr. at 272.

of the events surrounding the robbery." Id. (citations omitted). Addressing the merits of the claim, the State argued that the trial court's ruling was not an abuse of discretion since Dr. Miller had opined that, while it could be possible, there was no factual basis on which to conclude that Whittier had metabolic acidosis or suffered its effects on the date of the offense. See Resp. Ex. 46 at 22, 31.  The appellate court affirmed Whittier's conviction and sentence per curiam without issuing a written opinion.  See Whittier, 912 So.2d 1222; Resp. Ex. 10.

Given the record in the instant case, Whittier has not shown that counsel's failure to pursue an involuntary intoxication defense based on Whittier's metabolic acidosis and request a jury instruction on involuntary intoxication was deficient performance. Since Dr. Miller's opinion was firm and consistent that there was no factual basis on which to conclude that Whittier had metabolic acidosis or suffered its effects on the day of the robbery, counsel did not act unreasonably in not pursuing an involuntary intoxication defense based on metabolic acidosis. See Resp. Ex. 46 at 15-31.  Moreover, Whittier expressed at trial that he had "great confidence" in counsel's representation, see Tr. at 42, had been adequately informed about available defenses, and agreed with the chosen theory of defense (admitting that he had robbed the bank, but that he was unarmed during the robbery).

Even assuming arguendo deficient performance by defense counsel, Whittier has not shown prejudice. Specifically, he has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had pursued an involuntary intoxication defense based on Whittier's metabolic acidosis and had requested a jury instruction on involuntary intoxication. Thus, Whittier's ineffectiveness claim fails because he has not shown either deficient performance or resulting prejudice.

## B. Ground Two

As ground two, Whittier asserts that counsel was ineffective because she failed to introduce the bank video which allegedly would have established that Whittier was not armed during the robbery. Whittier raised this ineffectiveness claim in his Rule 3.850 motion. The trial court ultimately denied the Rule 3.850 motion with respect to this issue, stating:

> In his second ground for relief, the Defendant claims trial counsel was ineffective because she did not introduce the bank's surveillance video to establish that the Defendant was unarmed during the robbery. At trial, photographs duplicated from the bank surveillance video were properly admitted into evidence as fair and accurate depictions of the video images. (Exhibit "L," pages 63-71.)[14] The Defendant admits "[t]hat the photographs introduced by the State did not depict that Defendant Whittier carried a firearm, but they were unclear and therefore

---

[14] See Tr. at 63-71.

left open the possibility for the State to argue that Defendant Whittier did carry a firearm." (Defendant's Amended Motion, at 8-9.) Thus, it appears that the Defendant's underlying complaint concerns the clarity of the images, not the effectiveness of trial counsel.

Initially, this Court notes that to the extent the Defendant appears to be attempting to challenge the sufficiency of the evidence against him, the Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking post conviction relief. Betts v. State, 792 So.2d 589 (Fla. 1st DCA 2001); Jackson v. State, 640 So.2d 1173 (Fla. 2d DCA 1994). Moreover, the Defendant, once more attempts to disguise a claim raised and denied on direct appeal in the guise of ineffectiveness of counsel. Specifically, the Defendant claimed on direct appeal that the Court erred because it admitted the photographs and did not require the State to introduce the video. (Exhibits, "I," "J," "K.")[15] Thus, having raised this claim on direct appeal, the Defendant is procedurally barred from raising it again in a motion for postconviction relief. Medina v. State, 573 So.2d 293 (Fla. 1990) (affirming the denial of postconviction relief and holding that issues that had been raised or should have been raised on direct appeal are barred in postconviction proceedings). The Defendant may not use these postconviction proceedings to relitigate issues decided a[d]versely to him on direct appeal. Thus, the Defendant's ground two is procedurally barred and constitutes an abuse of process. Foster v. State, 614 So.2d 455 (Fla. 1992); Ziegler v. State, 632 So.2d 48 (Fla. 1993); Ragan v. State, 643 So.2d 1175 (Fla. 3d DCA 1994). The previous denial of that claim constitutes the law of the case. Raley v. State, 675 So.2d 170 (Fla. 5th DCA 1996). The Defendant's ground two is denied.

---

[15] See Resp. Exs. 45; 46; 47.

Resp. Ex. 19 at 92-93.  On appeal, the State addressed the claim on the merits.

> If this Court is of the opinion, that [Whittier's] postconviction motion was actually a valid claim of ineffective assistance of counsel for failing to introduce the videotape in [Whittier's] case in chief, this Court still may affirm the trial court's ruling.  Even if the videotape is as [Whittier] asserts and does not have any images of him holding a firearm, such evidence is of little probative value, inasmuch as it shows the same thing that the still photographs showed - i.e., that [Whittier] did not have a gun in any of the pictures. Thus, trial counsel was not ineffective for failing to produce cumulative evidence.

Resp. Ex. 25 at 4.  The appellate court affirmed the denial per curiam.

The appellate court may have affirmed the denial of Whittier's motion for post conviction relief based on the State's argument on the merits.  If the appellate court addressed the merits, Whittier would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceedings.  Thus, Whittier is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state court's adjudication of this claim is not entitled to deference under AEDPA, Whittier's claim is still without merit.  Indeed, based upon the record, the Court determines that counsel's performance was well within the wide range of professionally competent assistance.  At trial, when the State expressed its intention to introduce still photographs from the bank's surveillance videotape (of Whittier in the bank on the day of the robbery), defense counsel objected, arguing that "the video itself should be admitted into evidence" under the best evidence rule. Tr. at 44.  After hearing arguments, the court concluded:

> There is nothing misleading about the photographs that are being proposed.  The videotape is equally available to the defense and the objection is overruled assuming that they are identified by an appropriate individual the photographs may be used.

Id. at 48.

After a sidebar discussion concerning the bank's videotape and the still photographic images, id. at 63-68, the court decided to take a recess to view the videotape, id. at 68-69.  Announcing that it had "viewed the complete tape with the still photographs held up beside the television screen," id. at 69, the court stated:

> Clearly the still photographs are
> precisely the photographs that appear on the
> tape. They are a fair and accurate
> representation of the tape and the still
> photographs may be used and that of course
> does not preclude the defense from using any
> other still from the videotape or the
> videotape itself for any purpose which the
> defense might deem appropriate. . . .

Id. at 69-70. Thus, given the court's ruling, it was not unreasonable for counsel not to introduce the bank's surveillance videotape as it would only emphasize the images by replaying them before the jury.

Even assuming arguendo deficient performance by defense counsel, Whittier has not shown prejudice. Specifically, he has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had introduced the bank's surveillance videotape at trial. Even if the defense had introduced the videotape, it was cumulative evidence. The jury viewed the still photographs, which were "precisely" the images that appeared on the videotape. Tr. at 69. Although neither the videotape nor the still images showed that Whittier was armed, the State presented substantial evidence that Whittier was armed with the short-barreled shotgun during the robbery inside the bank. When the police arrested Whittier, the shotgun was underneath the blue long-sleeve shirt he was wearing, tied to a piece of rope that was looped over his shoulder. Id. at 165-69. Witnesses testified that Whittier was wearing a blue shirt when he robbed the bank and

as he was entering his car to flee the scene.  <u>Id</u>. at 77, 91, 120-28, 135.  Additionally, Ms. Kwiatek, the assistant branch manager, testified that, when Whittier opened his "top shirt" inside the bank, she "observed a black object." <u>Id</u>. at 51, 57, 78, 81-82.  As the arresting officer stated, it would have been difficult to take the rope off of the shotgun due to the shirt being worn over it without first removing the shirt.  <u>Id</u>. at 169-70.  Thus, Whittier's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## C. Ground Three

As ground three, Whittier asserts that counsel was ineffective because she failed to: (a) obtain a second opinion from a medical expert as to Whittier's competency to proceed to trial, and (b) request a competency hearing.  Whittier raised this ineffectiveness claim in his Rule 3.850 motion. Ultimately, the trial court denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In his third ground for relief, the Defendant raises two subclaims. In subclaim one, he alleges that trial counsel was ineffective because she failed to contest the Defendant's competency to proceed to trial. Specifically, he claims that trial counsel did not seek a second opinion with regard to his competency to stand trial. (Defendant's Amended Motion, at 9-10.)  In subclaim two, the Defendant claims that the Court did not hold a competency hearing to determine whether he was competent to stand trial. (Defendant's Amended Motion, at 10.) Initially, this Court

34

notes that the Defendant's claims are completely unfounded.

As to subclaim one, this Court notes that prior to stipulating that the Defendant was competent to proceed, the Court issued two Orders Appointing Expert to Examine Defendant and Report to Defendant's Attorney dated April 25, 2003 and August 27, 2003 respectively. (Exhibits "M," "N.")[16] In response to the Order dated April 25, 2003, Dr. Ernest Miller examined the Defendant and found him competent to proceed to trial. (Exhibit "O."). In response to the Order dated August 27, 2003, Dr. Umesh Mhatre examined the Defendant and found him competent to proceed to trial. (Exhibit "P.") Thus, the record reflects that trial counsel sought and obtained two expert opinions attesting to the Defendant's competency to proceed to trial independent of the competency finding made by Dr. Marcellus Taylor, Senior Psychologist at Florida State Hospital. (Exhibit "Q.") The Defendant's subclaim one of his third ground for relief is denied.

In the Defendant's second subclaim, he alleges that the Court did not hold a competency hearing to determine the Defendant's competency to proceed to trial. However, the Defendant's claim is refuted by the record. On November 6, 2003, the Court held a hearing to determine the Defendant's competency to proceed to trial. (Exhibit "R.") At the hearing, trial counsel submitted Dr. Umesh Mhatre's report for the Court's review. (Exhibit "R," page 3.) Additionally, both parties stipulated that the Defendant was competent to proceed. (Exhibit "R," pages 3-4.) See Fowler v. State, 255 So.2d 513, 514 (Fla. 1971) ("where the parties and the judge agree, the trial court may decide the issue of competency on the written reports alone.") referencing Brown v. State, 245 So.2d 68 (Fla. 1971), vacated in part on other grounds, 408

---

[16] See Resp. Exs. 35; 36.

U.S. 938 (1972). The Court found that "based upon the report and the stipulation of counsel for both parties that Stephen A. Whittier [was] competent to proceed," and issued an Order Adjudging Defendant Mentally Competent. (Exhibits "R," page 3-4;"S.")

This Court further notes that the Defendant's competency was evaluated at trial prior to the Defendant's testimony. "The test for whether a defendant is competent to stand trial is whether 'he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him.'" Hunter v. State, 660 So.2d 244, 246 (Fla. 1995) citing Dusky v. U.S., 362 U.S. 402, 402 (1960). At trial, the Court addressed the Defendant as follows:

> The Court: Mr. Whittier, I would like to ask you a few more questions if you would come forward, please, with your attorney. Mr. Whittier, as you know the defense of insanity has not been raised in this case. Have you had an opportunity to talk with your attorneys about the variety of different defenses that might be available to you in this case, including but not limited to the defense of insanity?
>
> The Defendant: Yes, I have.
>
> The Court: And without sharing with me the privileged communications, have you discussed with your attorney whether or not the defense of insanity might be a viable defense for you in this case?
>
> The Defendant: We have discussed that.
>
> The Court: Have you talked with her about whether or not there is any

expert testimony that would support that defense?

The Defendant: Yes, Your Honor, we have.

The Court: Has she answered all of your questions about the defense of insanity and whether or not that would be a provable defense in this case?

The Defendant: We have discussed it.

The Court: Has she answered all those questions to your complete satisfaction?

The Defendant: Yes.

The Court: Do you feel that you understand the issue completely?

The Defendant: Yes, because I have spoken with three -- there has [sic] been three expert witnesses that interviewed me since I have been back, one before I went to the state hospital and then a team that took care of me for six months at the state hospital, so I understand what's going on and I understand that there are expert witnesses who have said that I need to be on this medication.

The Court: The question that I am really asking you now is not so much about whether you need to be on that medication currently but whether the defense of insanity is a defense that you would want to raise in this case. You have indicated to me that you have talked with your attorneys about whether or not such a defense would be available to you under the state of the facts and the law and the expert testimony in this case?

The Defendant: Yes. We discussed it and I agree with the course that we are taking at this moment.

The Court: Has anyone pressured you to say that?

The Defendant: No, ma'am.

The Court: Has anyone threatened you to say that?

The Defendant: No, ma'am.

The Court: Is anyone promising you anything to say that?

The Defendant: No.

The Court: And without discussing the results of any confidential evaluations, Ms. Kalil, are there evaluations that have been done in this case on the issue of insanity that are not confidential?

Trial Counsel: The only one, Your Honor, is the one by Dr. Miller which I have provided to the Court and that was part of the earlier argument that we had months ago regarding the issue of the medical issues raised in this case.

The Court: And Dr. Miller's opinion in the court file then would not support a defense of insanity.

Trial Counsel: That is correct.

(Exhibit "H," pages 249-252.) This colloquy is sufficiently thorough and adequately reflects that the Defendant had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and that he had a rational as well as factual understanding of the proceedings against him. Moreover, the Defendant freely and knowingly

consented to defense counsel's strategy of not
contesting the Defendant's competency.
Consequently, the Defendant's decision to
agree with trial counsel's strategy on the
record, precludes his instant objection to
this strategy in subclaim one and refutes any
claim of error raised in subclaim two. Thus,
the Defendant's third ground for relief is
denied.

Resp. Ex. 19 at 93-97 (footnote omitted). On appeal, the appellate

court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the

merits, there are qualifying state court decisions. Thus, the

Court considers this claim in accordance with the deferential

standard for federal court review of state court adjudications.

After a review of the record and the applicable law, the Court

concludes that the state courts' adjudications of this claim were

not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and

were not based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceedings.

Thus, Whittier is not entitled to relief on the basis of this

claim.

Moreover, even assuming the state courts' adjudications of

this claim are not entitled to deference, Whittier's

ineffectiveness claim, nevertheless, is without merit because the

trial court's conclusion is supported by the record. Counsel's

performance was well within the range of professionally competent

assistance.   Counsel did not act unreasonably when she did not obtain yet another medical opinion, but instead stipulated that Whittier was competent to proceed to trial based upon the psychiatric evaluation of Dr. Mhatre.  Moreover, at the November 6, 2003 hearing, the court stated: "I have now read the September 1, 2003, report of psychiatrist Dr. Umesh M[h]atre which indicates that in Dr. M[h]atre's opinion Dr. Whittier is competent and able to proceed in this case.  He does require continued psychotropic medication." Resp. Ex. 3 at 3.  Based on the stipulation of both parties and Mhatre's psychiatric evaluation and report, the court found Whittier was competent to proceed to trial.  Id. at 4.

Even assuming arguendo deficient performance by defense counsel, Whittier has not shown prejudice.  Specifically, he has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had obtained a second opinion from a medical expert.  Thus, Whittier's ineffectiveness claim fails because he has not shown either deficient performance or resulting prejudice.

### D. Ground Four

As ground 4(a), Whittier asserts that counsel was ineffective because she failed to object to the trial court's jury instructions regarding whether Whittier actually carried a firearm.  As ground 4(b), citing Apprendi, 530 U.S. 466, he states that the jury instructions did not require the jury to find beyond a reasonable

doubt that he actually possessed a firearm.  Whittier raised ground

4(a) in his Rule 3.850 motion.   In denying the motion as to the

claim, the court stated that the claim had been previously raised

in his Rule 3.800(b)(2) motion.  Whittier raised ground 4(b) in his

Rule 3.800 motion, <u>see</u> Resp. Ex. 43, and in denying the motion, the

trial court stated:

> In the instant Motion, the Defendant
> asserts that the Court improperly enhanced the
> Defendant's sentence on Count One based upon
> the  aggravating  circumstances  that  the
> Defendant  possessed  a  firearm  during  the
> commission  of  the  charged  Armed  Robbery,
> relying upon <u>Apprendi</u>.  The Defendant contends
> that  the  jury  was  not  instructed  that  they
> must find the aggravators "beyond a reasonable
> doubt"  and  therefore,  the  enhancement  of  the
> Defendant's sentences was improper.  The Court
> instructed the jury that
>
>> The defendant has entered a plea of
>> not  guilty.   This  means  you  must
>> presume or believe the defendant is
>> innocent.  And the presumption stays
>> with  the  defendant  as  to  each
>> material  allegation  in  the
>> information  through  each  stage  of
>> the  trial  unless  it  has  been
>> overcome  by  the  evidence  to  the
>> exclusion of and beyond a reasonable
>> doubt.
>
> ("Exhibit  "D,"  page  13.)[17]   A  "material
> allegation" is defined as "an assertion that
> is  essential  to  the  claim  or  defense."
> Black's Law Dictionary 74 (7th ed. 1999).  The
> aggravator  the  Defendant  complains  of,
> specifically "possess a firearm" as to Count
> One, was a material allegation to support the

---

[17] <u>See</u> Tr. at 14.

charge of Armed Robbery.  (Exhibit "E.")[18]
Therefore, this Court finds that the jury was
instructed that it must find the existence
[of] this aggravator beyond a reasonable
doubt.

Additionally, under Apprendi, when a fact
other than a prior conviction is used to
enhance a defendant's sentence for the crime
of which he is convicted, that fact must have
been submitted to the jury and found beyond a
reasonable doubt.  530 U.S. at 490.  However,
in Hunter v. State, 828 So.2d 1038 (Fla. 1st
DCA 2002), the Court applied the Apprendi
doctrine to the imposition of a sentence
enhancement under section 775.087, Florida
Statutes (2002), and held that a jury can make
a finding that a defendant committed the crime
while using a firearm by finding that
defendant guilty of a crime involving a
firearm.  Therefore, the jury need not make
separate findings regarding the elements of
the enhancement if those elements are inherent
to the crime for which the defendant was
convicted.

In the instant case, this Court finds
that the Defendant's claim is without merit.
In Count One, the Information charged that
"during the commission of the aforementioned
robbery the said STEPHEN A. WHITTIER did
actually possess a firearm, contrary to the
provisions of Sections 812.13(2)(a) and
775.087, Florida Statutes." (Exhibit "E.")
The jury returned a verdict finding the
Defendant guilty as charged of Armed Robbery
with a specific finding that the Defendant
actually possessed a firearm during the
commission of the robbery. (Exhibit "F.")[19]
Therefore, this Court finds that firearm
element was sufficiently established pursuant
to Apprendi.  See Hunter.  Accordingly, the

---

[18] See Resp. Ex. 5, Amended Information, filed March 25, 2004.

[19] See Resp. Ex. 7, Verdict - Count One.

42

Court did not improperly enhance the Defendant's sentence.

Resp. Ex. 44 at 12-14. Whittier argued this issue on direct appeal, see Resp. Ex. 45 at 26-34, the State filed an Answer Brief, see Resp. Ex. 46, and the appellate court affirmed Whittier's conviction and sentence per curiam without issuing a written opinion, see Whittier, 912 So.2d 1222; Resp. Ex. 10.

The State, in its appellate brief, addressed claim 4(b) on the merits. Resp. Ex. 46 at 41-50. Thus, the appellate court may have affirmed Whittier's conviction based on the State's argument on the merits. If the appellate court addressed the merits, Whittier would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Whittier is not entitled to relief on the basis of claim 4(b).

Moreover, even assuming that the state courts' adjudications of this claim are is not entitled to deference, Whittier's claim is simply without merit because the trial court's conclusion is fully supported by the record. Additionally, as to claim 4(a), counsel's

performance was within the wide range of professionally competent assistance.  The following facts are pertinent for consideration of ground four.  As count one of the Amended Information, the State of Florida charged Whittier as follows:

> STEPHEN A. WHITTIER on the 17th day of July, 2002, in the County of Duval and the State of Florida, **did carry a firearm, to-wit: a shotgun,** and did unlawfully by force, violence, assault, or putting in fear, take money or other property, to-wit: U.S. currency, the property of The Peoples First Community Bank, as owner or custodian, from the person or custody of Nadine Kwiatek, with the intent to permanently or temporarily deprive Nadine Kwiatek of the money or other property, and during the commission of the aforementioned robbery, **the said STEPHEN A. WHITTIER did actually possess a firearm,** contrary to the provisions of Sections 812.13(2)(a) and 775.087, Florida Statutes.

Resp. Ex. 5 (emphasis added).  Under Florida law, robbery without a firearm, deadly weapon, or other weapon is a second-degree felony.  Fla. Stat. § 812.13(2)(c)(2002).  However, robbery with a firearm or other deadly weapon is "a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s.775.082, s.775.083, or s.775.084." Fla. Stat. § 812.13(2)(a)(2002).  As to count one, the jury found Whittier guilty of robbery, as charged in the Information, and that he "actually possessed a firearm during the commission of the robbery."  Resp. Ex. 7, Verdict - Count One; Tr. at 453.

On June 26, 2000, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that

44

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.  As the Court clarified on June 24, 2004, "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. 296, 303 (2004) (emphasis deleted). Under Florida law, "in order to apply the [firearm] enhancement provision of section 775.087(2)(a)(1), the State must prove actual possession." Bundrage v. State, 814 So.2d 1133, 1134 (Fla. 2nd DCA 2002). Long before Apprendi was decided, pursuant to the Florida Supreme Court's decision in State v. Overfelt, 457 So.2d 1385 (Fla. 1984), Florida required the determination of actual possession of a firearm to be determined by jury.  Bundrage, 814 So.2d at 1134.

In the instant case, Whittier does not contest that the jury specifically found that he had actual possession of a firearm during the commission of the robbery.  Instead, he asserts that "the jury instructions failed to inform the jury that it must find beyond a reasonable doubt that [he] actually possessed a firearm in order to support the imposition of the firearm enhancement." Amended Petition at 9 (footnote omitted).  Additionally, he states that the trial court's instruction that the jury apply the beyond a reasonable doubt standard to the elements of the offense of robbery "implied to the jury" that the standard applied only to the

elements of robbery to the exclusion of any other finding. <u>Id</u>. at 9 n.9. On this basis, Whittier argues that counsel was ineffective because she failed to object to the court's jury instructions. <u>Id</u>. at 9.

Given the record, the court's instructions adequately informed the jury that all material allegations were to be proved beyond a reasonable doubt. <u>See</u> Tr. at 425-50. While Whittier quoted only portions of the jury instructions, <u>see</u> Amended Petition at 8-9, the court's instructions to the jury must be considered, not in isolation, but as a whole in the context of the entire record. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991). Whittier does not dispute that the record of the instant case shows that the trial court instructed the jury on the "beyond a reasonable doubt" standard with respect to each of the four elements provided in the statutory definition of robbery. <u>See</u> Amended Petition at 8-9. Additionally, the record confirms that the "beyond a reasonable doubt" standard was the only standard on which the jury was instructed.

After specifically instructing the jury that, to prove the crime of robbery, the State must prove the four elements defining robbery beyond a reasonable doubt, <u>see</u> Tr. at 425-27, the court then instructed:

> The punishment provided by law for the crime of robbery is greater if in the course of committing the robbery the defendant carried some kind of weapon.

An act is in the course of committing the robbery if it occurs in an attempt to commit robbery or in flight after the attempt or commission.

Therefore, if you find the defendant guilty of robbery you must then consider whether the state has further proved those aggravating circumstances and reflect this in your verdict.

If you find that the defendant carried a firearm in the course of committing the robbery you should find him guilty of robbery with a firearm.

Id. at 427-28.  Thus, the jury was instructed that the State's burden remained proof "beyond a reasonable doubt" with respect to "aggravating circumstances," and if the jury were to find any such circumstance proven, it should be reflected in the jury's verdict.

Reinforcing its earlier admonitions, the court later instructed the jury:

The defendant has entered a plea of not guilty.  This means that you must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation in the information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.

Id. at 433.  The court further instructed:

If you return a verdict of guilty it should be for the highest offense which has been proven beyond a reasonable doubt. If you find that no offense has been proven beyond a reasonable doubt then of course your verdict must be not guilty.

<u>Id</u>. at 438.  Thus, the court's instructions, as a whole, adequately instructed the jury that the State's burden was to prove beyond a reasonable doubt all the elements of robbery as well as any aggravating circumstance, such as carrying a firearm during the commission of the robbery.  Indeed, "[a] jury is presumed to follow [the court's] instructions." <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000) (citation omitted).

Moreover, as previously noted, Whittier's defense strategy was to concede guilt to robbery, but contest the State's theory that he was armed with a firearm during the commission of the robbery. Thus, with this strategy, defense counsel focused the jury's attention on this disputed fact and repeatedly argued to the jury, in opening and closing arguments, that the State had failed to carry its burden of proving beyond a reasonable doubt that he carried a firearm during the commission of the robber. <u>See</u> Tr. at 36, 39-41, 352-54, 404-22.

Accordingly, counsel's performance was well within the range of professionally competent assistance.  Whittier has not shown that counsel's failure to object to the jury instructions was deficient performance. Even assuming arguendo deficient performance by defense counsel, Whittier has not shown prejudice. Specifically, he has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the jury instructions.  Thus, Whittier's

ineffectiveness claim fails because he has not shown either deficient performance or resulting prejudice.[20]

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Whittier's ineffective assistance claims fail. Knowles, 556 U.S. at 123. Accordingly, for these reasons,

---

[20] See Purvis v. Crosby, 451 F.3d 734, 737 (11th Cir. 2006) (stating that, where petitioner claims counsel should have objected, "we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal."), cert. denied, 549 U.S. 1035 (2006). The Court noted that its decision in Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310 (11th Cir. 2003) (per curiam), "is not to the contrary." Purvis, 451 F.3d at 737.

> [In Davis, 341 F.3d 1310] trial counsel objected during voir dire to the Batson error that was being committed but when his objection was rejected, counsel failed to take the next step of renewing that objection after the conclusion of voir dire; in the Florida courts that is a necessary step before the issue may be reviewed on appeal. Id. at 1312. This Court held that because the failure of counsel was solely in his role as appellate counsel at trial (those are not the words we used in Davis, but it is what we meant), the prejudice inquiry should focus on the effect that counsel's omission at trial had on the appeal. Id. at 1315-16.

Id.

the Amended Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Whittier seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Whittier "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

50

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. #6) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.    If Whittier appeals the denial of the Amended Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of March, 2013.

MARCIA MORALES HOWARD
United States District Judge

51

sc 1/17
c:
Stephen Allen Whittier
Ass't Attorney General (Jordan)